Motion to dismiss appeal denied; motion for waiver allowed in part
June 27, 1956, submitted on briefs January 15,
affirmed March 27, 1957

## BARBER *v.* GLADDEN

IN THE MATTER OF THE
APPLICATION FOR A WRIT OF HABEAS CORPUS OF
GEORGE R. BARBER *v.* GLADDEN

298 P. 2d 986
309 P. 2d 192

George R. Barber, in pro. per. for waiver of bond on appeal, and payment of fees.

Robert Y. Thornton, Attorney General for Oregon, and Peter S. Herman, Assistant Attorney General, for motion to dismiss appeal.

BRAND, J.

This is an action by George R. Barber wherein he seeks a writ of habeas corpus against Clarence T. Gladden, Warden of the Oregon State Penitentiary, defendant. As will later appear, the plaintiff's action was dismissed and he has appealed to this court. However, the plaintiff has filed in this court no transcript on appeal as required by ORS 19.070 and no judgment roll, as provided by ORS 19.090 and by Rule 3 of this court. Our knowledge that an appeal has been filed is derived from a motion filed by the Attorney General, with affidavits and exhibits attached thereto. Under the statutes now in force, this court acquires jurisdiction of an appeal in a civil case when the notice of appeal has been "given, and entered in the journal of the court or filed with the clerk, as the case may be, * * *." ORS 19.030(3). We have been made aware that jurisdiction has vested in this court by the filing of the motion of the Attorney General pursuant to Rule 33 of this court. The motion thus filed prays for an order dismissing the appeal on the ground that the plaintiff has failed to file an undertaking on appeal as required by ORS 19.030(4) and 19.040. Attached to the motion is a copy of the plaintiff's notice of appeal from the order of the circuit court of 17 April 1956, duly certified by the county clerk. Also attached is an affidavit of an assistant attorney general to the effect that on 21 May 1956 he was served with plaintiff's notice of appeal from the order of the circuit court dismissing the action, and that no undertaking had been served upon him. There is another affidavit that no undertaking on appeal has been served upon

the defendant Gladden. The motion and affidavits are dated 11 June 1956.

On 8 June the plaintiff presented a motion for "an order authorizing the Honorable George R. Duncan, Judge of the circuit court of Marion County, to direct the Marion County Treasurer to post an undertaking and pay all fees and costs on appeal in the above-entitled cause. Or in the alternative order the requirement waived.

"The grounds and reasons for this motion is that plaintiff-appellant, is an indigent person wholly without funds personal or otherwise, to pay such fees or costs or to post an undertaking required to prosecute said appeal, and said cause was instituted in the circuit court of Marion County, pursuant to ORS 34.365. * * *"

The motion is accompanied by an affidavit of plaintiff to the effect that he is an indigent person "wholly without funds, personal or otherwise, nor does he have any security." This court is without statutory authority to direct the circuit judge to require the treasurer of Marion County to post an undertaking on appeal for plaintiff or to pay all fees and costs on appeal. The Judicial Administration Act of 1953, ORS 2.310-2.340, on which plaintiff relies, gives us no such authority. The remaining question is whether we should allow the alternative motion and waive the filing of any undertaking on appeal.

██ Habeas corpus is a civil action, and appeals are required to be taken "in like manner and with like effect as in an action. * * *" ORS 34.710. The statute governing appeals in civil actions requires that:

"Within 10 days from the giving of notice or service of notice of the appeal, the appellant shall cause to be served on the adverse party or his attorney an undertaking as provided in ORS 19.040,

and within said 10 days shall file with the clerk the original undertaking, with proof of service indorsed thereon. * * *'' ORS 19.030(4).

The same section provides that the appeal may be dismissed for failure to give such undertaking. If the statute is constitutional as applied to the case of the plaintiff, we must deny the application for a waiver of the rule requiring an undertaking on appeal, and there being no bond filed or offered, it would then be necessary to dismiss the appeal.

Plaintiff argues with much feeling that plaintiff has a statutory right of appeal and that this court cannot, in view of the Equal Protection Clause of the Fourteenth Amendment, administer the statute so as to deny adequate appellate review to the poor while granting such review to all others. The statute requiring an undertaking on appeal in civil cases and in habeas corpus has been uniformly enforced and never, so far as we know, has it been challenged until now.

A recent decision of the United States Supreme Court requires a reexamination of the issue. In *Griffin v. Illinois*, 351 US 12, 76 S Ct 585, 586, the facts were as follows: The defendants were convicted of armed robbery. Thereafter they moved in the trial court for an order requiring that they be furnished, without cost, a certified copy of the entire record, including a transcript of the proceedings. They alleged that they were poor persons with no means of paying the necessary fees to acquire the transcript and record needed for an appeal. The allegations of poverty were not denied. Under Illinois law ''in order to get full direct appellate review of alleged errors by a writ of error it is necessary for the defendant to furnish the appellate court with a bill of exceptions or report of proceedings at the trial certified by the trial judge. As Illinois

concedes, it is sometimes impossible to prepare such bills of exceptions or reports without a stenographic transcript of the trial proceedings." *Griffin v. Illinois,* supra. Under Illinois law, except in case of defendants sentenced to death, "defendants needing a transcript, whether indigent or not, must themselves buy it." *Griffin v. Illinois,* supra.

The claim was made by motions in the trial court that failure to provide defendants with the transcript would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The motion was denied. Defendants then filed a petition under the Illinois Post Conviction Hearing Act (Ill Rev Stat, 1955, ch38, § 826-832.) Under that act only constitutional questions could be raised. It provided that free transcripts could be had under statute if constitutional questions were involved, but the defendants had asserted "manifest non-constitutional errors" which could not be presented for review without a transcript. This petition was denied and the Illinois Supreme Court affirmed. The United States Supreme Court granted certiorari. In the opinion by a divided court it was held that "In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color." It then cited the provision of the Illinois Constitution which is similar to Article I, § 10 of the Oregon Constitution, which reads:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

We quote further from *Griffin v. Illinois,* supra:

"* * * It is true that a State is not required by the Federal Constitution to provide appellate

courts or a right to appellate review at all. See, e.g., McKane v. Durston, 153 U.S. 684, 687-688. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. * * *''

The judgment of the Illinois Supreme Court was vacated and the cause remanded. The decision was based upon the Equal Protection Clause of the Fourteenth Amendment. From a specially concurring opinion by Justice Frankfurter, we quote: "Candor compels acknowledgment that the decision rendered today is a new ruling. * * *'' In that opinion persuasive reasons are given for holding that the "new ruling" under the Equal Protection Clause should not be given retrospective application, citing *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 US 358, 77 L ed 360. There is also a powerful dissent by Justices Burton, Minton, Reed and Harlan.

■ For reasons which will be apparent we shall not discuss the relative merits of the majority and minority opinions. The judges of this court are sworn to support the Constitution of the United States. The Supreme Court is the ultimate authority on issues arising under the Federal Constitution. When it speaks upon such an issue, whether by unanimous vote or as too often appears, by a mere majority vote, we are bound by its decision. We cannot in good conscience be parties to judicial nullification or "interposition" which could result in 49 purported authorities on constitutional issues instead of one.

■ Our only question here is whether it is clear that *Griffin v. Illinois* is controlling in the pending case. If it is, then we must follow that decision. In *Griffin v. Illinois* the question related to the right to a transcript on appeal which was necessary to enable the defendants to show that ordinary errors of law had been committed. Because of defendants' poverty it was ordered that such transcript be furnished without cost to the defendants. The appeal which the defendants sought to perfect in *Griffin v. Illinois* was based upon alleged errors of law which could only be shown by a transcript. The United States Supreme Court did not intimate that the alleged errors were such as to render the conviction void by reason of any violation of the constitutional rights of the defendants. Yet, to enable the proverty-stricken defendants to prosecute an ordinary appeal, it directed that they be furnished a transcript without cost to them. The constitutional issue of which the court spoke was therefore not that constitutional rights were violated at the trial, but was that constitutional rights would be violated after the trial if the defendants were not furnished a transcript on appeal.

In the pending case the plaintiff brought habeas corpus, which necessarily involved claims of violation of his constitutional rights rendering the judgment of conviction not only erroneous, but void. We feel forced to the conclusion that the United States Supreme Court, as at present constituted, would hold that the case at bar presented more potent ground for relief than appeared in *Griffin v. Illinois.*

If a pauper who appeals to a state supreme court from alleged ordinary nonconstitutional errors of law is entitled, under the Equal Protection Clause, to such assistance as will make possible the fair presentation

of his case, then surely the United States Supreme Court would hold that a pauper who claims that he is imprisoned under a void judgment would be entitled under the same clause to the waiver of the requirement of a bond for costs if such waiver is necessary to the presentation of his appeal. It may be that a distinction will be suggested between the two cases, because *Griffin v. Illinois* was a criminal appeal whereas Barber's appeal is in a civil action for habeas corpus. But the argument cuts the wrong way. To be sure, habeas corpus is in form a civil proceeding, but it is one based upon provisions of the Oregon Constitution. Its function, as applied to persons imprisoned for crime, is to afford relief from confinement under a void judgment, a wrong which transcends in seriousness mere errors of law at a trial.

██ We are bound to enforce the statutory provision requiring the filing of an appeal bond, unless that provision as applied to the case of an indigent appellant, is unconstitutional. We are forced, not by our own reasoning, but by the necessary implications of the decision of the United States Supreme Court, to hold that the enforcement in this case of the requirement for an appeal bond would violate the Equal Protection Clause of the Fourteenth Amendment and therefore that the statute is to that extent and in this application, unconstitutional. We are not authorized to order the payment for the plaintiff of any fees out of public funds. We must therefore waive the requirement of an appeal bond and the payment of fees in this court. It is so ordered.

This decision is strictly limited in its application to the specific facts of this case. It may be argued that the decision in *Griffin v. Illinois* has wider application. We think the Supreme Court will not carry its ruling

to such coldly logical extreme as would disrupt the accepted judicial procedures of the 48 states. It will be time enough to consider any extension of the rule if and when that court shall make such extension.

The motion to dismiss the appeal is denied.

George R. Barber, appellant, in propria persona.

Robert Y. Thornton, Attorney General, and Peter L. Herman, Assistant Attorney General, for respondent.

ROSSMAN, J.

This is an appeal from an order of the circuit court which dismissed a habeas corpus proceeding and remanded the plaintiff to the custody of the defendant warden of the state penitentiary.

The plaintiff filed a petition for a writ of habeas corpus in the Circuit Court for Marion County December 22, 1955, naming as defendant the warden of the state penitentiary. The court issued the writ, the defendant filed a return, and plaintiff demurred to the return. The demurrer was overruled and plaintiff filed a reply. Defendant demurred to the reply and the court sustained the demurrer. Upon the refusal of the plaintiff to plead further, the court issued the challenged order which dismissed the proceeding. The plaintiff appealed.

The defendant warden, in the return of the writ, set forth as his authority for the imprisonment a copy of a judgment order and sentence rendered by the Circuit Court for Douglas County November 20, 1953. By that order, plaintiff was sentenced to the penitentiary for an indeterminate period of time not to exceed 25 years, having been convicted of the crime of burglary with explosives. Plaintiff had entered a plea of guilty to the indictment.

On this appeal, plaintiff bases his attack on the legality of his imprisonment upon the following five grounds:

1. ORS 164.260, which defines the crime of burglary with explosives, is so vague that it violates Art

I, § 11, of the Oregon Constitution and the due process clause of the Fourteenth Amendment to the Constitution of the United States.

2. ORS 132.550, which is a guide to district attorneys in the drawing of indictments, is violative of Art I, § 11, of the Oregon Constitution and the due process clause of the Fourteenth Amendment of the Constitution of the United States in that it sanctions the omission from the indictment of a description of the crime of which the defendant is accused and of the act or acts done by him constituting that crime.

3. The indictment under which plaintiff was tried and convicted failed to state facts sufficient to constitute a crime and was, therefore, violative of ORS 132.510, et seq, Art I, § 11, of the Oregon Constitution, and the due process clause of the Fourteenth Amendment to the Constitution of the United States.

4. The sentence is void because it constitutes cruel and unusual punishment in violation of Art I, § 16, of the Oregon Constitution.

5. Plaintiff was denied equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States in that his two accomplices in the perpetration of the crime for which he is imprisoned were permitted to plead guilty to the crime of burglary not in a dwelling (ORS 164.240) and received indeterminate sentences of not to exceed three years.

The constitutionality of a statute under which a person has been convicted upon a plea of guilty may be tested by habeas corpus. *Kelley v. Meyers,* 124 Or 322, 263 P 903; *Smallman v. Gladden,* 206 Or 262, 291 P2d 749.

ORS 164.260 reads:

"Any person who breaks and enters any building in the nighttime with intent to commit a crime therein, and in the commission of or attempt to commit such crime, uses or attempts to use nitroglycerine, dynamite, gunpowder or other high explosive, is guilty of burglary with explosives, and shall be punished upon conviction by imprisonment in the penitentiary for not more than 40 years."

In the words of Mr. Justice Holmes, we believe the statute "lays down a plain enough rule of conduct for anyone who seeks to obey the law." *United States v. Alford*, 274 US 264, 71 L Ed 1040, 47 S Ct 597. None of the words employed in the statute are beyond the ken of a man of ordinary understanding. In addition, two of them are clearly defined elsewhere. See ORS 161.020 and 161.030 ("crime") and ORS 164.210(1) ("nighttime").

Plaintiff's complaint seems to be that the statute does not specifically mention the use of explosives to force a safeguard nor the taking of property. Suffice it to say that while these may be among the elements of a charge under ORS 164.260, the legislature has so drawn the statute as to make it broader in scope.

ORS 164.260 is not vague and indefinite, and conviction pursuant to it did not, therefore, deprive plaintiff of his liberty without due process of law (14th Amendment, U. S. Constitution) nor did it prevent plaintiff from being informed of the nature of the accusation against him (Art I, § 11, Oregon Constitution).

ORS 132.550 provides that indictments "may be substantially in the following form:

| The State of Oregon | Circuit Court for the |
| vs. | County of ———— |
| A———— B———— | State of Oregon |

> A.B. is accused by the grand jury of the County of ——————, by this indictment, of the crime of —————— (here insert the name of the crime, if it has one, such as treason, murder, arson, manslaughter, or the like; or if it is a crime having no general name, such as libel, assault, and battery, and the like, insert a brief description of it as given by law), committed as follows:
>
> A.B., on the —— day of —————— 19—, in the county aforesaid (here set forth the act charged as a crime).
>
> Dated at ——————, in the county aforesaid, the —— day of ——————, A.D. 19—.
> (Signed):                    C.D., District Attorney.
>
> (Indorsed): 'A true bill.'
>
> (Signed)   E.F., Foreman of the Grand Jury.''

That statute received comment in *United States v. Mc-Kinley,* 127 F 168, as follows:

> "The form prescribed in the Oregon statute is not intended to indicate a rule as to the requisites of indictments, but is a guide for the convenience of the pleader.''

Viewed in that light, ORS 132.550 is not amenable to attack; its provisions are not intended to establish a rule of law.

Lest the foregoing seem to imply criticism of ORS 132.550, we state that plaintiff has failed by a wide margin to demonstrate any defect in it. Spaces to detail the requirements of ORS 132.530 that the indictment must be certain as to the crime charged and its particular circumstances are fully provided for in the form.

A facsimile of the indictment introduced in evidence by plaintiff, omitting formal parts, follows:

> "George R. Barber is accused by the Grand Jury for the County of Douglas, State of Oregon, by this

indictment of the crime of Burglary with explosives committed as follows:

"The said George R. Barber on the 25th day of October, A.D. 1953, in the said County of Douglas and State of Oregon, then and there being, did then and there unlawfully, wilfully and feloniously break and enter in the nighttime a certain building not a dwelling, to-wit: Neilson's Market located on South Stephens Street near the South City limits of the City of Roseburg, County and State aforesaid, the same being then and there a building in which there was at the time property kept with the intent of him, the said George R. Barber, to commit larceny therein by forcibly breaking an outer ventilator of the said building and while he, the said George R. Barber, was engaged in the commission of said larceny therein, did then and there use nitroglycerine, contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

In *Hills v. Pierce,* 113 Or 386, 231 P 652, this court said:

"It is settled by abundant authority that although the indictment under which a prisoner is held in custody is defective in that it fails to state the facts constituting the crime, yet he is not entitled to his discharge upon *habeas corpus* if enough appear upon the face of the indictment to charge him with the crime."

■ *State v. Chapin,* 74 Or 346, 144 P 1187, sets out the standard which governs the sufficiency of indictments on appeal:

"* * * The general rule is that when the statute sets out what shall constitute the offense, it is sufficient for the indictment to charge the offense substantially in the language of the statute. If the elements of the crime are set forth in the indictment sufficiently to inform the defendant of

the charge he is called upon to answer, that is all that is required: * * *."

And see ORS 132.540.

■ The indictment here challenged meets both the foregoing standards. It parallels the provisions of ORS 164.260, and where necessary specifies the details of the charge. Plaintiff was informed of the date and place of the alleged offense, the specific crime intended (larceny—ORS 164.310) and the specific explosive allegedly used. See *State v. Tovrea,* 123 Or 231, 261 P 431.

■ In *Macomber v. State,* 181 Or 208, 180 P2d 793, this court declared that, normally, the extraordinary remedy of habeas corpus is not available to those who neglected to appeal. See, to like effect, *Anderson ex rel. Poe v. Gladden,* 205 Or 538, 288 P2d 823, cert den 350 US 974, 100 L Ed 845, 76 S Ct 451, and *Alexander v. Gladden,* 205 Or 375, 288 P2d 219. That rule is particularly pertinent with respect to plaintiff's contention that his punishment was cruel and unusual in the light of the provisions of ORS 138.050, which reads:

"A defendant who has plead guilty may take an appeal from a judgment on conviction where it imposes an excessive fine or excessive, cruel or unusual punishment. If the judgment of conviction is in the circuit court, the appeal shall be taken to the Supreme Court; * * * On such appeal, the appellate court shall only consider the question whether an excessive fine or excessive, cruel or unusual punishment not proportionate to the offense has been imposed. If in the judgment of the appellate court the fine imposed is excessive or the punishment imposed is excessive, unusual or cruel and not proportionate to the offense, it shall direct the court from which the appeal is taken to impose the punishment which should be administered."

That statute gave plaintiff the opportunity to appeal from the sentence on the identical grounds upon which his present contentions rest. The rule stated in *Macomber v. State,* supra, therefore, is applicable.

15. In view of the importance of the constitutional safeguard here involved, we will give attention to plaintiff's argument. The bare fact that a sentence is within the maximum which the legislature has prescribed does not prevent it from violating the constitutional provision forbidding the imposition of cruel and unusual punishments. *State v. Ross,* 55 Or 450, 104 P 596, 106 P 1022, app dis 227 US 150, 57 L Ed 458, 33 S Ct 220; *Cannon v. Gladden,* 203 Or 629, 281 P2d 233.

█ Fitting the data of the present record into the pertinent paragraph of *State v. Ridder,* 185 Or 134, 202 P2d 482, it appears that the plaintiff has supplied this court with no information

"* * * upon which to act except the bare fact that [he] was sentenced to serve [an indeterminate term not to exceed 25 years] in the penitentiary on a plea of guilty to a crime which carried with it [a maximum penalty of an indeterminate term not to exceed 40 years]. This, we need hardly say, does not warrant us in disturbing the sentence."

See *State v. Peddicord,* 209 Or 360, 306 P2d 416 (64 OAS 109); and *Franklin v. Brown,* 73 W Va 727, 18 SE 405. The extreme danger to life and limb which results from the use of explosives justifies harsh penalties for their unauthorized use. The legislature has recognized the necessity for strict supervision over the use of explosives in legitimate enterprises in ORS 480.010 through 480.990. The sentence imposed upon plaintiff was not a cruel and unusual punishment.

█ Plaintiff's final contention is wholly without merit. He has no standing to complain of the fact that

his purported accomplices were convicted under a different statute and received lesser sentences. Plaintiff has cited no case in which such circumstances were found to be a denial of the equal protection of the laws. Lack of evidence to convict for the greater crime, cooperation with law enforcement agencies, any of these may have been factors in the grand jury's or district attorney's decision, and none can be said to operate unfairly against one in plaintiff's position.

*State v. Pirkey,* 203 Or 697, 281 P2d 698, and *State v. Cory,* 204 Or 235, 282 P2d 1054, have no bearing on the present case. The Pirkey decision declared a statute unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution which attempted to give to the grand jury or magistrate discretion as to whether a person accused of making, drawing, uttering or delivering a check not representing sufficient funds should be tried for a felony or a misdemeanor. The Cory case held that portion of a statute unconstitutional which purported to vest in district attorneys unlimited discretion as to the filing of habitual criminal informations against felons in cases not involving violence or threat of violence to person.

The judgment is affirmed.