Submitted on briefs September 17, affirmed December 3,
petition for rehearing denied December 31, 1958

## BARBER *v.* GLADDEN
332 P. 2d 641

Robert Y. Thornton, Attorney General for Oregon, and Peter S. Herman, Assistant Attorney General, of Salem, Attorneys for respondent.

O'CONNELL, J.

This is a habeas corpus proceeding initiated by George R. Barber on November 5, 1957 against Clarence T. Gladden, Warden of the Oregon State Penitentiary. The plaintiff appeals from an order of the Circuit Court for Marion County dismissing the action. The plaintiff was sentenced on November 20, 1953 for a term of 25 years in the State Penitentiary after a plea of guilty to a charge of burglary with explosives, in violation of ORS 164.260. He was represented by counsel at that time. No appeal was taken

from the judgment of conviction. On December 1955 the plaintiff commenced a habeas corpus proceeding in which he attacked the conviction on five grounds. He appealed from an order dismissing his action in that case. The order of dismissal was affirmed in *Barber v. Gladden,* 210 Or 46, 298 P2d 986, 309 P2d 192 (1957).

In the action which is now before us the plaintiff contends that his imprisonment was invalid on five grounds enumerated in his replication in the following order:

(1) The committing magistrate acted without legal authority for the reason that ORS 51.220 is void. This section provides as follows:

> "A justice of the peace in a justice district abolished by ORS 51.030 shall be the judge of the district court created by ORS 46.020 or 46.025 during the remainder of his elective term, or until his successor is elected and qualified."

The plaintiff argues that ORS 51.220 violates the Oregon Constitution in that it is "an unlawful and unauthorized delegation of Legislative power" for the reason that it purports to create a district judgeship without election or appointment. He contends that since the section is void he was not legally committed by a magistrate and that therefore his conviction was void. He also contends that as a result of this alleged illegal procedure he was denied due process of law and equal protection of the laws under the Constitution of the United States.

(2) Oregon Laws 1949, Chapter 258 (which was applicable at the time plaintiff was prosecuted) was unconstitutional because the statute required the county court to prepare a jury list of "qualified jurors

in the county, as far as it may be able to ascertain the same from the latest tax roll and/or registration books of the county" and that this permitted "the systematic and intentional exclusion of a class of persons" by the county officials. He also charges that the method actually used in selecting the jurors who sat on the grand jury in his case was illegal and therefore he was deprived of his constitutional rights.

(3) The indictment under which he was convicted was fatally defective because it failed to allege the ownership of the building in which the crime was committed.

(4) The plaintiff's plea of guilty was the result of coercion and duress.

(5) The plaintiff was prejudiced by the trial court's action "in sentencing plaintiff on the basis of his [the judge's] recital that safecrackers once shot at his father."

The defendant demurred to allegations (1), (2), (3), and (5) contained in the plaintiff's replication on the ground that these allegations failed to set forth facts or grounds sufficient to entitle plaintiff to relief. The demurrer was sustained. Thereafter the defendant filed its answer to the remaining allegation, and after a hearing was held the court found that the plea of guilty was voluntarily made by the plaintiff. The court then entered an order dismissing the proceedings.

 This is the second habeas corpus proceeding brought by the plaintiff to test the validity of his incarceration resulting from the judgment of conviction on November 20, 1953. There is nothing in the record to show that the issues presented on this appeal could not have been presented in the first habeas corpus proceeding brought by the plaintiff in December 1955. In fact some of the grounds urged as a basis for the

writ in the present case are essentially the same as those presented in the first petition. See *Barber v. Gladden,* supra.

ORS 34.710 provides, in part, as follows:

"* * * No question once finally determined upon a proceeding by habeas corpus shall be re-examined upon another proceeding of the same kind."

This statute is a legislative declaration that the principle of res judicata is applicable to habeas corpus proceedings. That principle precludes the relitigation not only of matters actually determined in a prior proceeding but also matters which could properly have been determined in such earlier proceeding. *Kelley et ux v. Mallory et ux,* 202 Or 690, 277 P2d 767 (1954); *Yuen Suey v. Fleshman,* 65 Or 606, 133 P 803 (1913). Frequently res judicata is defined simply in terms of matters previously litigated as distinct from matters which could have been but were not litigated in the prior proceeding. See, for example, Black's Law Dictionary, page 1470. However, this manner of stating the principle is not regarded as a limitation upon the principle so as to exclude its operation in those situations in which the question was not raised in the prior proceeding but could have been raised and determined. And so also where a statute speaks only in terms of questions actually determined it may be construed more broadly to cover the principle of res judicata in its broader meaning. The Florida statute, FSA 79-10 which is similar to ORS 34.710 was so construed. Referring to the Florida statute, the court in *Durley v. Mayo,* 351 US 277, 283, said:

"In its more recent cases, the Supreme Court of Florida has held that, on an original application for habeas corpus, the petitioner may not raise

issues that have been raised in prior proceedings whatever those may have been. Also, that unless he can show good reason for his failure to do so, he is precluded from raising issues which he *could* have raised in any such prior proceedings. Washington v. Mayo, 77 So.2d 620; Irvin v. Chapman, 75 So.2d 591; Florida ex rel. Johnson v. Mayo, 69 So.2d 307. * * *"

We interpret our own statute, ORS 34.710, to mean that a denial of the writ of habeas corpus is res judicata on a subsequent application for the writ, not only upon grounds which *were* alleged, but also upon grounds which *could have been alleged* in the prior habeas corpus proceeding.

At common law the principle of res judicata had no application to habeas corpus proceedings, and the decision on one writ was not a bar to a subsequent proceeding. Ferris, Extraordinary Legal Remedies, Section 55; *Huffman v. Alexander,* 197 Or 283, 330, 251 P2d 87, 253 P2d 289. The explanation for the rule at common law is well stated in *Salinger v. Loisel,* 265 US 224, 230 (1924) as follows:

"* * * In early times when a refusal to discharge was not open to appellate review, courts and judges were accustomed to exercise an independent judgment on each successive application, regardless of the number. But when a right to an appellate review was given the reason for that practice ceased and the practice came to be materially changed,—just as when a right to a comprehensive review in criminal cases was given the scope of inquiry deemed admissible on habeas corpus came to be relatively narrowed."

Probably no court today would accept the common-law rule in its pristine form. Cf, Ex Parte Reinhardt, 88 Mont 282, 292 P 582 (1930). However, the extent

to which the courts have qualified the common-law rule differs in the various jurisdictions. Since the expansion of the writ of habeas corpus resulting from the decision in *Johnson v. Verbst,* 304 US 458 (1937) both the courts and legislatures have sought measures to deal more effectively with the increasing number of petitions for the writ. There has been a noticeable tendency to adopt more stringent rules with respect to the filing of successive applications for the writ. Even prior to the expansion of the writ alluded to above, departures were made from the common-law rule excepting habeas corpus proceedings from the principle of res judicata. Thus in *Salinger v. Loisel,* supra, after noting the common-law rule, the court said:

> "But it does not follow that a refusal to discharge on one application is without bearing and weight when a later application is being considered. \* \* \*
>
> "\* \* \* each application is to be disposed of in the exercise of a sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought. Among the matters which may be considered, and even given controlling weight, are \* \* \* (b) a prior refusal to discharge on a like application. \* \* \*" 265 US 224 at 230.

A similar position has been taken by a number of state courts. See, e.g., *Nicolay v. Kill,* 161 Kan 667, 170 P2d 823 (1946); *Fisher v. Warden of Maryland Penitentiary,* 195 Md 705, 71 A2d 871 (1950); *Labelle v. Hancock,* 99 NH 254, 108 A2d 545 (1954); *State v. Ingenito,* 16 NJ 36, 106 A2d 3 (1954). Some states have applied the rule that only issues actually determined in the prior proceeding are barred thereafter. *Gusick v. Eyman,* 81 Ariz 206, 303 P2d 531 (1956),

cert. den., 353 US 913 (1957); *Guy v. Foster,* 160 Tenn 285, 24 SW2d 897 (1930); *Bravata v. Morhous,* 273 App Div 929, 77 NYS2d 451 (1948); *Du Fault v. Utecht,* 220 Minn 431, 19 NW2d 706 (1945).

In still other states the principle of res judicata is applied in its broadest sense to habeas corpus proceedings. *Ex parte Horowitz,* 33 Cal2d 534, 203 P2d 513 (1949); *Woodruff v. Balkon,* 205 Ga 445, 53 SE2d 680 (1949); *Tilghman v. McLeod* (Okla Crim App), 306 P2d 732 (1957); *De Simone v. Cavell,* 185 Pa Super 131, 138 A2d 688 (1958). But c.f., *Commonwealth v. Banmiller,* 391 Pa 265, 137 A2d 468 (1958); *McMahon v. Mead,* 30 SD 515, 139 NW 122 (1912).

We believe that the principle of res judicata should be fully applicable to habeas corpus proceedings; we do not think that this position is inconsistent with ORS 34.710.

██ If a petitioner establishes that the grounds asserted in his petition could not reasonably have been presented in the prior proceeding he will not be precluded from asserting them. The rule we recognize may be stated in the same terms as Section 8 of the Uniform Post-Conviction Procedure Act, which has been recommended for adoption by the National Conference of Commissioners on Uniform State Laws (Annual Conference Meeting in its 64th Year, Philadelphia, Pa., August, 1955). It provides as follows:

> "All grounds for relief claimed by a petitioner under this Act must be raised in his original or amended petition, and any grounds not so raised are waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

The comment appended to this section explains its purpose:

"Many petitions for habeas corpus or other post-conviction relief are repetitious; others often are specious. This places an unnecessary burden upon the courts. It is highly desirable that a petitioner be required to assert all of his claims in one petition. His failure to assert them constitutes a waiver. The way is left open, however, for a subsequent petition if the court finds grounds for relief that could not reasonably have been raised in the original petition. * * *"

The application of ORS 34.710 to plaintiff's petition in the present case precludes him from reasserting each of the five grounds upon which he bases his petition. If he can establish that any of these grounds could not reasonably have been raised in the prior petition the principle we have announced in this case does not preclude him from taking appropriate action to protect his rights.

The judgment is affirmed.

ROSSMAN, J., dissenting in part.

I concur in the holding of the majority that the order entered in plaintiff's first habeas corpus action *(Barber v. Gladden,* 210 Or 46, 298 P2d 986, 309 P2d 192) adjudicated, not only all grounds alleged by the plaintiff in his pleadings, but all other grounds which could have been averred, but I dissent from the concluding part of the opinion which declares:

"If he can establish that any of these grounds could not reasonably have been raised in the prior petition the principle we have announced in this case does not preclude him from taking appropriate action to protect his rights."

Before the majority wrote that statement it declared:

"We believe that the principle of res judicata should be fully applicable to habeas corpus proceedings."

Obviously, if "the principle of res judicata" is "fully applicable" to habeas corpus proceedings, a petitioner must set forth in his petition all of his claims for relief and be deemed to have waived all others. If the majority view prevails, the doctrine of res judicata will become little more than a scarecrow. Our statutory enactment upon the subject (ORS 34.710), as I will presently show, is opposed to the majority position.

As the majority say:

> "There is nothing in the record to show that the issues presented on this appeal could not have been presented in the first habeas corpus proceeding brought by the plaintiff in December, 1955."

The plaintiff makes no averment that he was unaware, in 1955, of anything which he alleges in his present action. The majority continue:

> "In fact some of the grounds urged as a basis for the writ in the present case are essentially the same as those presented in the first petition."

The doctrine of res judicata rests upon the conviction, held in the legal system of all civilized nations, that litigation must come to an end, and that when a court of competent jurisdiction has adjudicated the controversy its judgment must be deemed the termination of the controversy. As said in 30A Am Jur, Judgments, p 373, § 326:

> "* * * Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless."

The present case justifies the statement just quoted that, in the absence of the doctrine, litigation "would be endless." The plaintiff was sentenced November 20, 1953, upon his plea of guilty to an indictment which

charged him with the crime of burglary with explosives. December 22, 1955, he filed in the Circuit Court for Marion County his first petition for a writ of habeas corpus. As in the present proceeding, the petition named as defendant the warden of the penitentiary. When the case came on for a hearing, the circuit court ruled adversely to the plaintiff and from its order dismissing the proceeding he appealed. His notice of appeal to this court met with a motion to dismiss. Thereupon the plaintiff moved for an order waiving the payment by him of appeal fees and the statutory requirement for an appeal bond. In *Barber v. Gladden,* 210 Or 46, 298 P2d 986, this court denied the motion to dismiss, waived the requirement for payment of appeal fees and, yielding to *Griffin v. Illinois,* 351 US 12, 76 SCt 585, held that the plaintiff need not file an appeal bond. The decision was rendered June 27, 1956. Subsequently the merits of plaintiff's habeas corpus proceeding were considered by this court and in a decision announced March 27, 1957, the order of the circuit court which dismissed the proceeding was affirmed. *Barber v. Gladden,* 210 Or 55, 309 P2d 192. November 5, 1957, the plaintiff filed in the Circuit Court for Marion County the petition in the present proceeding. The circuit court ruled against him and from the resulting order of dismissal we have this appeal.

We see from the foregoing that the plaintiff has been before the circuit court three times: first, as the defendant in *State v. Barber,* charged by an indictment with the crime of burglary with explosives; second, as the plaintiff in the habeas corpus proceeding entitled *Barber v. Gladden;* and third, as the plaintiff in the second habeas corpus proceeding entitled *Barber v. Gladden.* He has also been before this court

three times: first, when his appeal in his first habeas corpus proceeding met with a motion to dismiss and he himself moved for relief from the payment of appeal fees and the requirement of an appeal bond; second, when the merits of his appeal came on for a hearing; and third, his appearance before this court in the present case.

Our statute, which imports finality to the adjudications made in habeas corpus proceedings, does not warrant the majority's holding that if the petitioner "can establish that any of these grounds could not reasonably have been raised in the prior petition" he may file another proceeding. Our statute (ORS 34.710) says:

"* * *. No question once finally determined upon a proceeding by habeas corpus shall be re-examined upon another proceeding of the same kind."

If the word "question", which appears in the quoted statute, means only a specific ground set forth in the petition, the majority is right in its holding that the plaintiff may institute another post-conviction proceeding, but if the word "question" includes not only the specific grounds which were alleged in the first proceeding, but all others which were available, the outcome of the first case bars the maintenance of the second. Notwithstanding that the majority holds that the word "question" includes all grounds which could have been alleged, it nevertheless authorizes the institution of a third proceeding. I am satisfied that we must adopt the view that the word "question" includes, not only the grounds specifically set forth in the first proceeding, but all others that could have

been alleged. In fact, ORS 34.360 provides that a petition for a writ of habeas corpus

"shall state, in substance * * *

(6) That the legality of the imprisonment or restraint has not already been adjudged upon a prior writ of habeas corpus."

ORS 34.310 requires that a petition for a writ of habeas corpus shall aver:

"(5) If the imprisonment or restraint is alleged to be illegal in what the alleged illegality consists."

There can be no doubt that the plaintiff could have presented in his first proceeding all of the grounds which he possesses. The majority, it will be recalled, says: "If he can establish that any of these grounds could not reasonably have been raised in the prior petition" he may institute another proceeding. When the plaintiff was before the circuit court upon arraignment after indictment, he could have raised every ground mentioned in the majority opinion. In fact, that was the proper time to challenge the legality of the grand jury, the sufficiency of the indictment, the jurisdiction of the court or present any other ground for relief that he had. Again, when he filed his first habeas corpus action, he had every opportunity procedure affords to present to the court every ground that he had in mind. Our habeas corpus statute, which is unusually comprehensive, says:

"Every person imprisoned or otherwise retrained of his liberty within this state, * * * may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal to be delivered therefrom."

Other sections of the act which I have quoted demand that the petition, in challenging the validity of his imprisonment, must set forth all of his grounds of

attack. He cannot withhold some and, upon meeting with defeat, file another proceeding in which he alleges some of his other grounds. Accordingly, it is clear that the plaintiff had every opportunity that liberal procedure affords to present, at the time of his arraignment or in his first petition for a writ of habeas corpus, the grounds which the majority says he may present upon a third application.

Possibly the majority may have in mind that the plaintiff was ignorant of something affecting his rights when he filed the first and present proceedings and of which he may wish to avail himself when he files the envisioned third proceeding. Bearing in mind that habeas corpus is a civil proceeding (*Barber v. Gladden,* supra), the following, taken from *The Town of Beloit v. Morgan,* 7 Wall 619, 19 L Ed 205, is pertinent to a proposal to employ ignorance as an excuse for an omission from a previous petition in habeas corpus:

> "On the 9th of January, 1861, the appellee recovered a judgment at law against the appellant upon another portion of these securities—though not the same with those in question in this case. The parties were identical, and the title involved was the same. All the objections taken in this case might have been taken in that. The judgment of the court could have been invoked upon each of them, and if it were adverse to the appellant, he might have brought the decision here by a writ of error for review. The court had full jurisdiction over the parties and the subject. Under such circumstances, a judgment is conclusive, not only as to the res of that case, but as to all further litigation between same parties touching the same subject-matter, though the res itself may be different.
>
> "An apt illustration of this principle is found in

Gardner v. Buckbee, 3 Cow. 120. Gardner bought a vessel from Buckbee, and gave two notes for the purchase money. Buckbee sued him upon one of the notes in the Marine Court. Gardner set up as a defense, fraud in the sale and a want of consideration. A verdict and judgment were rendered in his favor. In a suit upon the other note, in the Common Pleas of the City of New York, the judgment in the Marine Court was held to be an estoppel upon the subject of fraud in the sale. Bouchaud v. Dias, 3 Den. 238; Doty v. Brown, 4 N. Y. 71, and Babcock v. Camp, 12 Ohio St. 11, are to the same effect and equally cogent. Such has been the rule of the common law from an early period of its history down to the present time. Ferrar's Case, 6 Co. 8; Hitchen v. Campbell, 2 W. Bl. 831; Duchess of Kingston's Case, 2 Sm.L. Cases, 656. Aurora v. West, ante, 42; see, also Birckhead v. Brown, 5 Sandf. S. C. 135. But the principle reaches further. It extends not only to the question of fact and of law, which were decided in the former suit, but also to the grounds of recovery or defense which might have been, but were not, presented.

"In Henderson v. Henderson, 1 Hare, 115, the Vice Chancellor said: 'In trying this question, I believe I state the rule of the court correctly, that where a given matter becomes the subject of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The plea of res judicata applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged

to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'

"A party can no more split up defenses than indivisible demands, and present them by piecemeal in successive suits growing out of the same transaction. Brandernagle v. Cocks, 19 Wend. 207. The judgment at law established conclusively the original validity of the securities described in the bill and the liability of the Town to pay them. Nothing is disclosed in the case which affects this condition of things."

*Cromwell v. County of Sac,* 94 US 351, holds:

"In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

In *Columb v. Webster Manufacturing Co.,* 84 F 592, the cause of action arose out of the same transaction as the previous one, but the complaint alleged additional charges of negligence. The decision followed the holding in *Town of Beloit v. Morgan,* supra, and held that the outcome of the first action barred the maintenance of the second action.

I dissent from the part of the opinion previously mentioned.