866 August 14, 2014 No. 54

IN THE SUPREME COURT OF THE
STATE OF OREGON

MARTIN ALLEN JOHNSON,
*Respondent on Review,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Petitioner on Review.*

(CC 06C16178; CA A154129; SC S061670)

En Banc

On review of an order of the Court of Appeals.*

Argued and submitted May 1, 2014.

Kathleen Cegla, Senior Assistant Attorney General, argued the cause and filed the brief for petitioner on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Daniel J. Casey, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Robert L. Huggins, Jr., Portland.

LANDAU, J.

The order of the Court of Appeals is affirmed in part, on other grounds, and reversed in part.

_____

* Order granting appellant's motion for reconsideration and adhering to prior order as modified; and striking motions filed by petitioner *pro se*, Rick T. Haselton, Chief Judge, August 23, 2013.

**LANDAU, J.**

The issue in this case is whether a petitioner in a post-conviction appeal is entitled both to be represented by counsel and to appear *pro se*. The Court of Appeals held that, under this court's decision in *Church v. Gladden*, 244 Or 308, 417 P2d 993 (1966), a post-conviction petitioner is entitled to be represented by counsel on appeal and, in the same appeal, to file any motions on his own behalf that his counsel has declined to file, provided the petitioner has a good faith and objectively reasonable basis for believing that competent counsel would have filed such motions. We conclude that our decision in *Church* does not countenance such "hybrid representation."

The relevant facts are not in dispute. Petitioner was convicted of eight counts of aggravated murder and sentenced to death. After an unsuccessful direct appeal, *State v. Johnson*, 340 Or 319, 131 P3d 173 (2006), petitioner sought post-conviction relief, alleging, among other things, ineffective assistance of trial counsel. At the post-conviction hearing, petitioner was represented by counsel. He also filed more than 100 *pro se* motions, totaling more than 6,000 single-spaced pages of argument. The post-conviction court refused to accept most of those *pro se* filings because they were not signed by counsel, but allowed others, along with the claims raised by petitioner's attorneys. The court ultimately determined that petitioner had received inadequate and ineffective assistance of trial counsel during the guilt phase of his aggravated murder trial. The court vacated his convictions and remanded the case for a new trial.

The superintendent of the Oregon State Penitentiary appealed the judgment ordering post-conviction relief. Shortly after that, petitioner filed a *pro se* notice of cross-appeal. He also filed three *pro se* motions requesting various forms of assistance in preparation for his new trial. For reasons unexplained, petitioner denominated those three motions his "3rd", "4th", and "5th" motions. In those motions, petitioner requested that three attorneys be appointed to help him prepare for the new trial, that "law enforcement" be required to preserve all evidence during the pendency of the appeal, and that the trial court include in the record

on appeal various materials that had been excluded from the record at the post-conviction hearing. One week later, petitioner's post-conviction trial counsel also filed a notice of cross-appeal.

The superintendent filed a motion to clarify which of the notices of cross-appeal were operative and whether the Court of Appeals considered petitioner "to be represented by counsel in this appeal." The superintendent later learned that petitioner was in fact represented by counsel. He then filed a motion to strike all of petitioner's *pro se* motions, arguing that, under ORS 9.320, a represented party may appear only through counsel. In the meantime, petitioner filed a number of additional *pro se* motions, denominated as his "2nd," "6th," and "7th" motions. The "2nd" motion, comprising 122 single-spaced pages, requested (among other things) an expedited appeal, the appointment of three additional lawyers to assist in preparing for the new trial, and the sealing of an affidavit of petitioner concerning various "confidential-private-privileged attorney client communications." The "6th" motion requested that the appeal "be heard by the Oregon Supreme Court not the Court of Appeals." The "7th" motion requested a court order allowing petitioner to access the "tools and facilities and time" to write his *pro se* motions and prepare for his appeal and retrial.

Petitioner's appellate counsel filed a response to the superintendent's motion, arguing that, under *Church*, "it is not petitioner's counsel, but petitioner himself, who bears personal responsibility for selecting and raising the issues he wants litigated in a post-conviction proceeding." According to petitioner's counsel, *Church* allows a post-conviction petitioner to submit *pro se* filings on appeal that are neither signed nor submitted by his appointed counsel.

The Appellate Commissioner ruled that both notices of appeal were operative. As for the *pro se* motions, the commissioner acknowledged that, under ORS 9.320, a represented party ordinarily is permitted to appear only through counsel and may not simultaneously appear *pro se*. Nevertheless, the commissioner concluded that, under *Church*, a petitioner is entitled "to file a motion in his or her own name when the petitioner has a good faith belief that

counsel lacks, or is failing to exercise, the 'skills and experience commensurate with the nature of the conviction and complexity of the case.'" (quoting ORS 138.590). Turning to the six *pro se* motions that had been filed to that point, the commissioner concluded that the first three had been filed before counsel had filed an appearance, and, as a result, petitioner had authority to file them on his own behalf. The commissioner then denied those three motions on the merits. As for the remaining three motions that had been filed *pro se* after counsel had filed an appearance, the commissioner struck those motions after concluding that none was cognizable because petitioner had failed to show that his appellate counsel had declined to file them.

        The superintendent petitioned for reconsideration, arguing that the commissioner had erred in even considering petitioner's *pro se* motions. In the meantime, petitioner filed four more such motions, denominated as his "8th" through his "11th" motions. In the "8th" motion, petitioner essentially replied to the state's response to his "6th" and "7th" motions. The "9th" motion was a 55-page, single-spaced document largely consisting of extended quotations from various appellate court cases and requesting "*Church* claims" and unspecified "evidence." The "10th" motion requested an extension of time for filing corrections to transcripts. And the "11th" motion requested a court order that petitioner's appellate counsel file a response to the superintendent's motion for reconsideration.

        The Court of Appeals largely upheld the commissioner's decision. The court concluded that, under this court's decision in *Church*,

> "[a] petitioner who is represented by appointed counsel on appeal may file a motion in his or her own name based on a showing that the petitioner has a good faith and objectively reasonable belief that counsel lacks, or is failing to exercise the 'skills and experience commensurate with the nature of the conviction and complexity of the case.'"

The court explained that, if a represented post-conviction petitioner desires to file a *pro se* motion, then he or she

> "must, in the introduction to the motion: (1) clearly state the relief sought; (2) state that (a) [the petitioner] asked

counsel to file a motion seeking the same relief and (b) counsel either explicitly declined to do so or failed to respond to the request for such a substantial period of time as to have implicitly declined to do so; (3) state that [the] petitioner has a good faith belief that counsel's failure to file the requested motion results from counsel's failure to render suitable representation; and (4) explain why [the] petitioner's belief in that regard is objectively reasonable."

The court affirmed the commissioner's rulings on the individual *pro se* motions that petitioner had filed to that point. Turning to the four additional motions, the court struck the first three on the ground that petitioner had failed to show that counsel had declined to file them, and denied the fourth on the ground that it had become moot, because counsel had since filed a response to the superintendent's motion.

The superintendent sought review of the Court of Appeals' order, arguing that the Court of Appeals had misread *Church*. In the superintendent's view, *Church* "stands for the limited proposition that a post-conviction petitioner has a procedural right—in the trial court—to seek that court's assistance if the petitioner's attorney is not pursuing the grounds for relief that the petitioner wants to litigate." According to the superintendent, nothing in *Church* altered the general rule, reflected in ORS 9.320, that a represented person must appear through counsel. In response, petitioner contends that the Court of Appeals "reasonably and correctly applied the principles of *Church* to this case."

We begin with some background principles. Since the mid-nineteenth century, Oregon law has required represented parties to litigate in court through their attorneys. *See Oregon Peaceworks Green, PAC v. Sec'y of State*, 311 Or 267, 270, 810 P2d 836 (1991) (noting that the rule "has remained essentially unchanged" since its enactment in 1862). The current rule is codified at ORS 9.320, which provides that, subject to an exception not applicable to this case,

"[a]ny action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a corporation appears by attorney in all cases, unless otherwise specifically provided by law. Where a party appears by attorney, the written proceedings *must*

be in the name of the attorney, *who is the sole representative* of the client of the attorney as between the client and the adverse party[.]"

(Emphasis added.) *See also* ORCP 17 (requiring that a represented party's court documents be signed by the party's attorney); ORAP 1.40(4) (adopting ORCP 17 "as a rule of appellate procedure applicable to the Supreme Court and the Court of Appeals").

The prohibition against nonlawyer legal practice serves the dual purpose of protecting the public interest and the rights of individual litigants. As this court explained in *Oregon State Bar v. Sec Escrows, Inc.*, 233 Or 80, 86-87, 377 P2d 334 (1962), "[e]very civilized society recognizes certain human rights and also recognizes a need for lawyers to aid in securing those rights. *** Lay[persons] are excluded from law practice *** solely to protect the public." Moreover, legal practice by nonlawyers often can be problematic because "[t]he lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, [and] proceedings that are needlessly multiplicative." *Oregon Peaceworks Green,* 311 Or at 272 n 4. In addition, lay litigants "lack[] many of the attorney's ethical responsibilities*, e.g.*, to avoid litigating unfounded or vexatious claims." *Id.* (internal citations omitted).

At the same time, an individual litigant generally has the right to represent himself or herself in court. As the United States Supreme Court has described, the right of self-representation is a bedrock principle of American jurisprudence dating back to the founding of our country. *Faretta v. California*, 422 US 806, 828-30, n 39, 95 S Ct 2525, 45 L Ed 2d 562 (1975) (discussing how the right to counsel and the right to self-representation developed in American history).

ORS 9.320 preserves that right. *Reed v. Roberts*, 304 Or 649, 655, 748 P2d 542 (1988) (stating that, as allowed by ORS 9.320, "[i]ndividuals may appear in their own behalf" in court). But it does not allow a party to prosecute an action individually *and* through an attorney. The right to engage in so-called "hybrid representation" has been rejected by this court in the context of criminal proceedings, despite the fact

that criminal defendants have a constitutional right to self representation under Article I, section 11. *State v. Stevens,* 311 Or 119, 123-25, 806 P2d 92 (1991) (holding that there is no state constitutional right to "hybrid representation," but recognizing trial court discretion to allow such representation); *State v. McDonnell,* 313 Or 478, 495, 837 P2d 941 (1992) (same); *see also* Wayne R. LaFave, 3 *Criminal Procedure* § 11.5(f)-(g) (2007) (collecting federal and state cases that reject the argument that a criminal defendant has a constitutional right to perform the same functions as his or her counsel).[1]

With those background principles in mind, we turn to the issue in this case—that is, whether this court, in effect, has created an exception to the statutory requirement that represented parties appear only through counsel in post-conviction cases. We first set out a brief overview of the relevant provisions of the state's post-conviction statutes.

The Oregon Post-Conviction Hearing Act (PCHA) was enacted in 1959. Or Laws 1959, ch 636. Before that time, persons convicted of criminal offenses were confronted with "a complex and confusing array of post-conviction remedies," including writs of habeas corpus, writs of coram nobis, motions to correct the record, and motions to vacate the judgment. *Bartz v. State,* 314 Or 353, 362, 839 P2d 217 (1992); *see also generally* Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 337-40 (1960) (discussing the background of the PCHA). The 1959 PCHA was adopted to provide a "detailed, unitary procedure to persons seeking post-conviction relief." *Bartz*, 314 Or at 362.

---

[1] Many other states also recognize that the constitutional rights to counsel and self-representation are mutually exclusive and, consequentially, reject hybrid representation as a right. *See, e.g., State v. Roscoe*, 184 Ariz 484, 498, 910 P2d 635, *cert den*, 519 US 854 (1996); *People v. Williams*, 58 Cal 4th 197, 255, 315 P3d 1 (2013), *cert den*, 134 S Ct 2637 (2014) ("Criminal defendants have the constitutional right to have an attorney represent them, and the right under the federal Constitution to represent themselves, but these rights are mutually exclusive."); *Sherwood v. State*, 717 NE2d 131, 135 (Ind 1999) ("[t]he Sixth Amendment does not require a trial judge to permit hybrid representation"). One exception is Kentucky, which expressly provides for hybrid representation in its state constitution. *See, Deno v. Commonwealth*, 177 SW3d 753, 757 (Ky 2005).

Two provisions of the PCHA are pertinent to this case, one requiring that indigent petitioners be provided with counsel and the other concerning the preclusive effect of a post-conviction judgment.

Section 9 of the PCHA is the first of those two provisions. Codified at ORS 138.590, it provides that any person "who is unable to pay the expenses" of a post-conviction proceeding may seek court-appointed counsel at the state's expense. In 1979, that statute was amended to provide that appointed counsel must possess "skills and experience commensurate with the nature of the conviction and complexity of the case." Or Laws 1979, ch 867, § 4. The legislature regarded appointment of counsel to be not only necessary in its own right, but also "highly desirable in view of the strict *res judicata* provisions" of the law. Collins and Neil, 39 Or L Rev at 351.

Section 15 of the PCHA, the second of the two provisions of significance to this case, described the preclusive effect of a post-conviction proceeding. Codified at ORS 138.550(3), that section provides, in part:

> "All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

Section 15 was "one of the most important portions of the act." Collins and Neil, 39 Or L Rev at 356. The state of the law before the adoption of the PCHA explains the particular significance of that section.

At common law, the principle of *res judicata* did not apply to habeas corpus proceedings; as a result, a decision in one case did not bar relitigating the same or similar issues in a subsequent proceeding. *See generally Barber v. Gladden*, 215 Or 129, 134-37, 332 P2d 641 (1958) (describing case law). In Oregon, the legislature adopted ORS 34.710, which changed the common-law rule by providing that "[n]o question once finally determined by habeas corpus shall be reexamined upon another proceeding of the same kind."

In *Barber*, this court held that "the principle of *res judicata* should be fully applicable to habeas corpus proceedings." 215 Or at 136. That is, the court held that a final decision in a habeas corpus proceeding should have preclusive effect "not only of matters actually determined in a prior proceeding but also matters which could properly have been determined in such earlier proceeding." *Id.* at 133. The court noted, in support of its decision, that the Uniform Post-Conviction Procedure Act contained a provision to similar effect, in response to the fact that many petitions for post-conviction relief are "repetitious," which "places an unnecessary burden upon the courts." *Id.* at 137 (quoting commentary to the Uniform Post-Conviction Procedure Act). Section 15 of the PCHA was intended, in effect, to codify the court's holding in *Barber*. Collins and Neil, 39 Or L Rev at 356.

With that statutory context in mind, we return to this court's decision in *Church*, on which the Court of Appeals based its order in this case. In *Church*, the petitioner was convicted of second-degree murder and, following an unsuccessful direct appeal, filed a petition for post-conviction relief under the PCHA, alleging various deficiencies in his criminal trial counsel's performance. The post-conviction court denied relief and dismissed the petition. 244 Or at 310. The petitioner then filed a second petition for post-conviction relief, alleging two claims that he had failed to assert in his first petition, and reasserting a third claim based on the failure of his post-conviction counsel to call certain witnesses to testify in the first post-conviction hearing. *Id.* The defendant warden of the Oregon State Penitentiary moved to quash the second petition under section 15 of the PCHA, ORS 138.550(3). The post-conviction court granted the motion to quash, and the petitioner appealed. *Id.* at 311. On appeal, the petitioner argued that ORS 138.550(3) did not apply. According to the petitioner, the new claims asserted in his second petition were those that his lawyer in the first petition had refused to advance. Because the lawyer had refused to advance those claims, the petitioner argued, those claims could not reasonably have been raised in the first proceeding. *Id.* The petitioner argued that the same reasoning supported consideration of his reasserted third claim, predicated on his lawyer's failure to call witnesses, as the petitioner had requested. *Id.*

This court rejected the petitioner's argument. The court began by "assum[ing], without deciding," that each of the three new claims otherwise "states an adequate ground for relief." *Id.* Even making that assumption, the court explained, the petitioner was not entitled to raise those issues in a second petition:

> "If petitioner has stated grounds for post-conviction relief which fall without the *res judicata* provision of ORS 138.550(3), it is absolutely impossible that there be any finality to this type of litigation. In each successive post-conviction proceeding all a petitioner need do is allege that his attorneys in each of his previous proceedings were unfaithful to their trust, and the door is opened wide to relitigate ad infinitum.
>
> "In our opinion petitioner has not alleged sufficient reasons to escape the application of the *res judicata* provision of ORS 138.550(3). If petitioner's attorney in the first post-conviction proceeding failed to follow any legitimate request, petitioner could not sit idly by and later complain. He must inform the court at first opportunity of his attorney's failure and ask to have him replaced, or ask to have him instructed by the court to carry out petitioner's request."

*Id.* at 311-12. In the court's view, the petitioner had "acquiesced in his attorney's failure to raise the issues *** when he did not call to the court's attention his desire to have additional matters presented." *Id.* at 312.

*Church* thus pertained to the *res judicata* provision of the PCHA, ORS 138.550(3), nothing more. It concerned the extent to which a post-conviction petitioner may assert a "ground for relief" in a subsequent petition that could have been asserted earlier. This court held that, if a post-conviction petitioner's attorney fails to assert a ground for relief, the petitioner must "inform the court" of the attorney's failure to avoid the preclusive effect of ORS 138.550(3). To be sure, the court referred to an attorney's failure to follow "any legitimate request." 244 Or at 311. But that reference should be taken in context. The court's statement plainly was rooted in its interpretation and application of ORS 138.550(3), which provides that "grounds for relief" must be asserted or be deemed waived.

In that light, we conclude that nothing in the court's opinion in *Church* may be fairly understood to state an exception to the requirement of ORS 9.320 that represented parties ordinarily must appear through counsel. And nothing in the opinion sanctions the sort of hybrid representation that permits a post-conviction petitioner to be represented by counsel and, at the same time, flood the court with *pro se* motions and other requests for relief any time the petitioner disagrees with counsel's prosecution of the case. *Church* says no more than this: If a post-conviction petitioner's attorney fails to assert a ground for relief, the petitioner must bring that fact to the attention of the court to avoid the effect of ORS 138.550(3).

Petitioner insists that *Church* is not limited to instances in which counsel fails to assert particular grounds for post-conviction relief. He notes that, in *Church*, the petitioner argued that he was not precluded from asserting a claim in his second petition because his attorney had failed to present *particular evidence* in support of a ground for relief at the first post-conviction hearing. In petitioner's view, that means that *Church* applies to any action that an attorney declines to take in a post-conviction proceeding.

Petitioner overlooks the fact that this court in *Church* did not actually decide that certain matters—such as a disagreement with counsel over the type of evidence to be offered—must be brought to the attention of the court. As we have noted, the court in *Church* "assume[d], without deciding," that each of the matters that the petitioner in that case had attempted to raise in his second petition otherwise "state[d] an adequate ground for relief." 244 Or at 311. The court held that, even indulging that assumption, ORS 138.550(3) foreclosed him from relitigating those issues. Thus, *Church* did not sanction *pro se* filings to complain about the failure of counsel to agree with a post-conviction petitioner on every single issue of trial strategy. By its terms, the decision is limited to the matter of attempting to relitigate a "ground for relief" within the meaning of ORS 138.550(3).

That leaves the question whether *Church* applies to appeals. As we have noted, the superintendent argues that

the rule in that case concerns only what a petitioner must do *at trial* to avoid waiver of grounds for post-conviction relief; "it has no role to play on appeal." We need not address that issue in this case, however. Even assuming for the sake of argument that *Church* has a role to play on appeal, the *pro se* motions that petitioner filed in this case while he was represented by counsel are not the sort to which the rule of that case would apply.

As we understand it, the Court of Appeals (largely adopting the reasoning of the Appellate Commissioner) concluded that, because petitioner's first three motions (his "3rd," "4th," and "5th" motions) were filed before counsel filed an appearance, he was entitled to file them *pro se*. The court nevertheless denied the motions on the merits, and it does not appear to us that the superintendent takes issue with the court's disposition of those motions.

The balance of the motions, filed *pro se* and after counsel filed his appearance, asked the Court of Appeals to take various actions to aid petitioner either in preparing for his new trial or in the conduct of his appeal. None of those motions concerned whether petitioner's appellate counsel had declined to advance a ground for post-conviction relief. None, for example, complained that counsel had failed to advance an assignment of error concerning the post-conviction court's dismissal of one of his claims. As such, none of them came within the ambit of *Church*.

As we have noted, in this case, the Court of Appeals struck all but one of petitioner's *pro se* motions filed after appellate counsel entered an appearance, but it did so based on a reading of *Church* that permits such motions so long as a post-conviction petitioner shows a good faith and objectively reasonable belief that counsel should have filed the motions. We conclude that the court arrived at the correct result as to those motions, but for an incorrect reason. The court also denied the final "11th" motion. In light of the foregoing analysis, the court erred in failing to strike that motion. Petitioner was represented by counsel. He had no authority to file any *pro se* motions. ORS 9.320.

The order of the Court of Appeals is affirmed in part, on other grounds, and reversed in part.