Submitted September 3, 2015, reversed and remanded September 8, 2016

KENNETH WAYNE PHILLIPS,
*Petitioner-Appellant,*

*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
09C24378; A154571

381 P3d 986

Jack A. Billings, Senior Judge.

Ryan O'Connor filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin K. Galli, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

## DUNCAN, P. J.

Petitioner appeals the judgment denying his petition for post-conviction relief (PCR), assigning error to the PCR court's denial of his motion for a continuance. As explained below, we conclude that the PCR court abused its discretion by denying the motion without affording petitioner an opportunity to make a sufficient record regarding the basis for the motion. Accordingly, we reverse and remand.

Petitioner filed a PCR petition, and an attorney, Cowan, was appointed to represent him in the PCR proceedings. On the day of the PCR trial, petitioner appeared by video from the correctional facility where he was housed, and his attorney appeared in person. When petitioner's attorney called petitioner as a witness, petitioner moved for a continuance:

"[PETITIONER]: Your Honor, before we begin I'd like to address the Court. I am moving at this time for a continuance of this proceeding.

"THE COURT: That's not allowed, Mr. Phillips. I'm denying your motion as not timely. Go ahead, Mr. Cowan.

"* * * * *

"[PETITIONER]: I can't state something for the record?

"THE COURT: * * * Mr. Phillips you're asking that this be continued, and the answer to that [is] it's not going to be continued. So, go ahead please.

"[PETITIONER]: I mean—

"THE COURT: Oh.

"[PETITIONER]: Mr.—well, I'd like to put on the record that Mr. Cowan has been non-responsive to my request to assist me and has completely failed to provide suitable counsel as required for my post conviction proceedings.

"THE COURT: All right.

"[PETITIONER]: Mr. Cowan—

"THE COURT: Very well, I understand you object to this and you believe that he has not adequately represented

you. I am not going to delay these proceedings based on your belief about that. And if you have a basis for that contention that can be taken up some other time and place, but not now.

"[PETITIONER]:   Well, I'd like to state these—

"THE COURT:   Mr. Cowan, would you please begin.

"[PETITIONER]:   I'd like to state these issues on the record, Your Honor.

"THE COURT:   I don't want to—

"[PETITIONER]:   This is the only time in a post conviction proceedings.

"THE COURT:   Well, you have said that you feel he has been unresponsive and not represented you adequately. That's about as broad as it possibly could be Mr. Phillips. [It] covers about everything—

"[PETITIONER]:   Well, there's—there's—

"THE COURT:   —that you might later claim. So—

"[PETITIONER]:   There's witnesses—

"THE COURT:   —I'm going to ask you sir to not discuss this further. If my failure to listen to you further is some error on my part that can be taken up. Mr. Cowan please go ahead."

To recap, petitioner moved for a continuance, and the PCR court summarily denied the motion as untimely and directed petitioner's attorney to proceed. Petitioner then asked if he could "state something for the record," and the court responded that the case would not be continued and again directed petitioner's attorney to proceed. Petitioner informed the court that his attorney had been nonresponsive and had failed to provide suitable counsel, and the court responded that it would not delay the proceedings and that if petitioner had a basis for his complaints about his attorney that could be "taken up some other time and place[.]" Petitioner said that he wanted to make a record, and the court responded by directing petitioner's attorney to proceed for the third time. When petitioner repeated that he wanted to make a record, the court said that petitioner's general complaints about his attorney would "cover about

everything" petitioner might later claim. When petitioner spoke again, the court asked him to "not discuss this further" and, for the fourth time, directed petitioner's attorney to proceed.

On appeal, petitioner asserts that the PCR court erred by denying his motion for a continuance. We review the denial of a motion for a continuance for abuse of discretion. *State v. Ferraro*, 264 Or App 271, 280, 331 P3d 1086 (2014). A court errs if it "fails to exercise discretion, refuses to exercise discretion or fails to make a record which reflects an exercise of discretion." *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987); *State v. Romero*, 236 Or App 640, 643-44, 237 P3d 894 (2010).

We conclude that the PCR court abused its discretion by denying petitioner's motion for a continuance without allowing petitioner to make a record regarding the basis for the motion. Whether denial of a motion for a continuance is error depends on the particular circumstances of the case. *State v. Ringler*, 264 Or App 551, 556, 333 P3d 1080, *rev den*, 356 Or 575 (2014); *State v. Hickey*, 79 Or App 200, 203, 717 P2d 1287 (1986). Here, the PCR court refused to afford petitioner an opportunity to identify the relevant circumstances. Consequently, the court was not in a position to make an informed ruling on the motion.

The PCR court initially stated that it was denying petitioner's motion as untimely, but the court did not provide petitioner an opportunity to explain why he was making the motion when he was. Unanticipated circumstances can arise, and a trial court cannot deny a motion for a continuance simply because the motion is made on the day of trial; whether a court may deny such a motion depends upon the particular circumstances of the case. *See Hickey*, 79 Or App at 204 (trial court abused its discretion by denying defendant's day-of-trial motion for a continuance, which was based on the fact that defendant's attorney's briefcase had been stolen the day before). A court may deny a day-of-trial motion for a continuance, absent a specific showing of good cause regarding the timing of the motion, but here, because the PCR court refused to allow petitioner to make a record, it did not have the information necessary to determine

whether petitioner had good cause for making the motion when he did.

Moreover, petitioner was able to alert the PCR court that his motion was related to his concerns about his court-appointed attorney. Depending on what they were, those concerns could have necessitated a continuance. For example, if petitioner's concern was that his attorney had a conflict of interest, the court would have had to hold a hearing, and, if there was such a conflict, the court would have had to appoint substitute counsel. *See Combs v. Baldwin*, 161 Or App 270, 276-77, 984 P2d 366 (1999) (holding, in a habeas corpus proceeding, that "it is against reason for a party in a civil case to be required to be represented by appointed counsel against the party's will and without a hearing on the merits of a claim of conflict of interest"); *cf. Elkins v. Thompson*, 174 Or App 307, 316, 25 P3d 376 (2001) (holding, in a PCR case, that the petitioner was not entitled to a hearing regarding his complaints about his appointed counsel where he had not alleged a conflict of interest). And, as another example, if petitioner's concern was that his attorney had not raised certain claims, the court would have had to either instruct the attorney to raise the claims or appoint substitute counsel. *See Church v. Gladden*, 244 Or 308, 311-12, 417 P2d 993 (1966) (if a PCR petitioner's attorney fails to raise a claim, the petitioner must inform the PCR court of the attorney's failure so that, if warranted, the court can either instruct the attorney to raise the claim or appoint substitute counsel). But again, because the PCR court refused to allow petitioner to make a record, the court was not in a position to conclude that it could go forward with the trial. Consequently, the PCR court did not properly exercise its discretion when denying defendant's motion for a continuance, and we are required to reverse and remand. *See State v. Harper*, 81 Or App 422, 424-25, 725 P2d 942 (1986) (reversing and remanding where the record did not indicate that the trial court considered whether the defendant's request for a continuance was reasonable under the circumstances).

The dissent contends that the PCR court did not err by denying defendant's motion for a continuance. Specifically,

the dissent contends that the PCR court could properly deny defendant's motion for three reasons: (1) petitioner made the motion himself, as opposed to having counsel make it; (2) the motion was untimely because it was not filed 28 days before trial as required by UTCR 6.030; and (3) the case had been pending for three years and the PCR court was prepared for trial. 280 Or App at 655-56 (DeVore, J., dissenting). Each of those reasons is incorrect.

First, petitioner was not required to have PCR counsel make the motion for him because the motion was based, at least in part, on petitioner's complaints about PCR counsel himself. Petitioner informed the court that he believed that his PCR counsel had been "non-responsive" and had "completely failed to provide suitable counsel[.]" And, although petitioner did not believe that PCR counsel was prepared for trial, PCR counsel was proceeding to trial. Thus, petitioner and PCR counsel's positions were at odds, and, consequently, petitioner was not required to sit silently when PCR counsel began to present petitioner's case. Petitioner could personally raise the issues of whether his right to suitable counsel was being violated and whether his PCR counsel was failing to raise grounds for relief.

Indeed, to the extent that petitioner's complaints were that his PCR counsel was failing to raise grounds for relief, petitioner was required to speak up in order to protect his ability to raise those grounds. Under the PCR Act, "[a]ll grounds for relief claimed by a petitioner in a [PCR] petition *** must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief therein which could not reasonably have been raised in the original or amended petition." ORS 138.550(3). In addition, although petitioners have a right to suitable counsel, ORS 138.590(1), if a petitioner's PCR counsel fails to raise a ground for relief, the petitioner must personally inform the court of the failure. The Supreme Court made this requirement clear in *Church*, where it held that, if a petitioner's PCR counsel fails to assert a ground for relief, the petitioner "could not sit idly by and later complain," instead, the petitioner "must inform the court at first opportunity of

his attorney's failure and ask to have him replaced, or ask to have him instructed by the court to carry out petitioner's request." 244 Or at 311-12; *Johnson v. Premo*, 355 Or 866, 877, 333 P3d 288 (2014) ("If a post-conviction petitioner's attorney fails to assert a ground for relief, the petitioner must bring that fact to the attention of the court to avoid the effect of ORS 138.550(3)."). Correspondingly, we have held that, if a petitioner's PCR counsel fails to raise a ground for relief in the petitioner's first PCR proceeding, the petitioner cannot raise that ground in a later PCR proceeding, even if the petitioner's PCR counsel was inadequate in failing to raise it in the first proceeding. *Page v. Cupp*, 78 Or App 520, 525, 717 P2d 1183, *rev den*, 301 Or 338 (1986). Thus, a petitioner not only can, but must, inform the court when the petitioner's PCR counsel is failing to raise grounds for relief. Accordingly, in this case, contrary to the dissent's suggestion, the PCR court could not deny petitioner's motion for a continuance, which was made in connection with what the PCR court itself recognized as a complaint that petitioner's PCR counsel had been "unresponsive and not represented [petitioner] adequately," on the ground that petitioner made the motion himself, rather than through his PCR counsel. The PCR court was required to afford petitioner the opportunity to fulfill the obligation that the law imposes on him to inform the PCR court about his counsel's failures to raise grounds for relief.

In support of the dissent's claim that the PCR court could deny petitioner's motion for a continuance on the ground that petitioner made the motion himself, the dissent relies on *Johnson*, in which the Supreme Court stated that "represented parties ordinarily must appear through counsel," 355 Or at 877, and that a party may not "'prosecute an action individually *and* through an attorney.'" 280 Or App at 654-55 (DeVore, J., dissenting) (quoting *Johnson*, 355 Or at 872) (emphasis in *Johnson*). But *Johnson* does not aid the dissent. *Johnson* stands for the proposition that a petitioner who has an attorney is not entitled to simultaneously act as his own attorney. 355 Or at 872. That is, a petitioner does not have a "right to engage in so-called 'hybrid representation.'" *Id*. But that is not what petitioner was seeking to do in this case. As is apparent even from the limited statements

that petitioner was able to make regarding his motion for a continuance, petitioner was raising his concerns about PCR counsel's representation. He was not seeking hybrid representation; he was seeking a continuance to ensure adequate representation.

The dissent's second reason for concluding that the PCR court did not err by denying petitioner's motion for a continuance—*viz.*, that the PCR court could deny the motion because it was not filed 28 days before trial—is also incorrect. The PCR court could not deny petitioner's motion for a continuance on the ground that it was untimely without affording petitioner an opportunity to make a record regarding the timing of the motion. As discussed above, unanticipated circumstances necessitating a continuance can arise. A court can deny a motion for a continuance made on the day of trial as untimely, absent a showing of good cause for the timing of the motion, but a court cannot deny a party a reasonable opportunity to make such a showing.

Finally, the dissent's third reason for concluding that the PCR court did not err by denying petitioner's motion for a continuance—*viz.*, that the PCR court could deny the motion because the case had been pending for three years and the PCR court was prepared for trial—is also incorrect. The dissent asserts that "the denial of the motion was within the range of permissible discretionary rulings, given the circumstances of the case." 280 Or App at 655 (DeVore, J., dissenting). The obvious difficulty with that assertion is that the PCR court denied petitioner the opportunity to inform it of the circumstances of the case. *See Harper*, 81 Or App at 425 ("As an essential predicate, the court should consider on the record whether the request for a postponement is reasonable in the circumstances.") According to the dissent, the PCR court could deny the motion because the case had been pending for three years and the PCR court was ready for trial. *Id.* As a general matter, those may be strong reasons to deny a motion for a continuance, but whether they are valid reasons in a particular case depends on whether they outweigh the reasons for granting the motion. Here, by denying petitioner an opportunity to make a record regarding the reasons for granting the motion, the PCR

court denied itself the information necessary to conduct that balancing.

Thus, we disagree with the dissent's conclusion that the PCR court could deny petitioner's motion as it did. We conclude that the PCR court could not summarily deny the motion without affording petitioner the opportunity to make a record. Consequently, we must reverse and remand. *Harper*, 81 Or App at 425 (reversing and remanding for a new trial where there record did not reflect that the trial court had considered whether the requested continuance was reasonable); *see also Hickey*, 79 Or App at 204 (reversing and remanding for a new trial when trial court erroneously denied requested continuance).

Although we resolve this appeal based on our conclusion that the PCR court erred by denying petitioner's motion for a continuance, which is the subject of petitioner's first assignment of error, we write further to respond to the dissent's analysis of petitioner's second and third assignments of error, which concern the PCR court's responses to petitioner's complaints, made at and after trial, concerning his PCR counsel. Specifically, in his second assignment of error, petitioner asserts that the PCR court erred when "it denied petitioner's verbal *Church v. Gladden* motion to instruct counsel to further investigate his claims, or, alternatively for substitution of counsel," and, in his third assignment of error, petitioner asserts that the PCR court erred when it "failed to act on petitioner's written motion pursuant to *Church v. Gladden.*"

The dissent rejects both of those assignments, concluding that the PCR court did not err because it could determine that petitioner's complaints about his PCR counsel were only about "evidence" or "strategy" and, therefore, were not types of claims that, under *Church*, required either instructions to PCR counsel or substitution of counsel. 280 Or App at 660-63, 663-65 (DeVore, J., dissenting). For the reasons explained below, we disagree with the dissent's reading of the record. In our view, it is apparent that petitioner was asserting that his PCR counsel had abandoned many of his claims, and it is also apparent that PCR counsel

had, in fact, failed to present the evidence necessary to proceed on many of petitioner's claims. Therefore, contrary to the dissent's conclusion, the PCR court could not dismiss petitioner's claims without further inquiry to determine whether it was necessary either to instruct PCR counsel to raise certain claims or to substitute counsel.

To explain our disagreement with the dissent, we must provide additional information about the nature of the proceedings. In the underlying criminal case, petitioner was charged with crimes for shooting another man, Seifried. The state's theory was that petitioner shot Seifried because he was angry that Seifried would not help him commit a robbery. Petitioner's theory was that it was Seifried who wanted to commit a robbery, and, when petitioner refused to help Seifried and took Seifried's gun, Seifried attacked him, and, in the fight that followed, petitioner accidentally shot Seifried. Both sides presented evidence in support of their theories, and the jury convicted petitioner.

Thereafter, petitioner filed the PCR petition in this case. In the petition, petitioner alleged, among other things, that his defense counsel had failed to adequately represent him at trial and sentencing. Petitioner's specific allegations included that his defense counsel had failed to call certain witnesses to testify at his trial and sentencing.[1] Among the witnesses that petitioner alleged should have been called were Christina Love, Melissa Henry, and John Davis.[2] According to the petition, Love would have testified that Seifried told her that he intended to commit a robbery; Henry, who was Seifried's girlfriend at the time of the shooting, would have testified that Seifried intended to commit a robbery and that he possessed guns; and Davis would have testified that he had seen Seifried in possession of a gun that matched the description of the gun used in the shooting. Other witnesses had testified to similar facts during

---

[1] Petitioner also alleged that, after Seifried testified, defense counsel should have recalled certain witnesses to impeach Seifried's testimony.

[2] We mention Love, Henry, and Davis as representative uncalled witnesses. In his petition, petitioner identified several others who he alleged should have been called. He also alleged that other physical and scientific evidence should have been presented.

the criminal trial, but the state[3] challenged the credibility of those witnesses, who had criminal histories.[4]

To obtain post-conviction relief on the ground that his defense counsel should have called certain witnesses at his criminal trial and sentencing, petitioner had to present evidence that the witnesses would have been available to testify at the trial and sentencing and that their testimony would have had a tendency to affect the results of those proceedings. *See Carias v. State of Oregon*, 148 Or App 540, 547, 941 P2d 571 (1997) (to establish that defense counsel's failure to call a witness was prejudicial, a petitioner must present evidence of what the witness's testimony would have been and that the witness would have been available to testify at trial); *see generally Real v. Nooth*, 268 Or App 747, 752, 344 P3d 33 (2015) (to prevail on a claim of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, a petitioner must prove, by a preponderance of the evidence, that defense counsel "failed to exercise reasonable professional skill and judgment based on the law at the time * * * counsel acted" and that that deficient performance "had a tendency to affect" the outcome of the prosecution); *Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (to prevail under the Sixth Amendment, petitioner must show that counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Before the PCR trial, petitioner's PCR counsel filed a trial memorandum. In the memorandum, PCR counsel identified evidence that supported a few of petitioner's claims, but he failed to do so for many of petitioner's claims

---

[3] To avoid confusion, we refer to the defendant in this PCR case, who is the superintendent of the correctional facility where petitioner is incarcerated, as "the state."

[4] The dissent seems to suggest that the testimony of the witnesses who did not testify at trial would have been duplicative of the testimony of the witnesses who did testify, including Everson, Helzert, and Goldsberry. 280 Or App at 665 (DeVore, J., dissenting). That suggestion overlooks the value of corroboration, especially when, as in this case, the state, in its PCR trial memorandum, attacked the credibility of the witnesses on which the dissent focuses.

regarding defense counsel's failure to call witnesses.[5] As the state pointed out in its trial memorandum, PCR counsel had not submitted affidavits or declarations from "the overwhelming majority" of the new witnesses that petitioner claimed should have been called at trial or sentencing.[6]

On the day of the PCR trial, it became apparent that petitioner's PCR counsel had abandoned many of petitioner's claims. As the state had pointed out, counsel had failed to present documentary evidence to support the majority of petitioner's claims regarding new witnesses, and, at trial, he failed to present any testimonial evidence to support those claims. The only witness petitioner's counsel called during the PCR trial was petitioner himself, and the evidentiary portion of the trial consisted only of PCR counsel identifying the claims as set out in the trial memorandum and asking petitioner if he had anything to add.

At several points during the trial, petitioner answered that he had nothing to add because, although he had asked PCR counsel to gather evidence and call witnesses, PCR counsel had failed to do so. In response to almost all of those complaints, the state moved to strike petitioner's answer on the ground that it was nonresponsive, and the PCR court granted the motion. For example, the following colloquy occurred when PCR counsel asked petitioner whether he had anything to add to the claims relating to Love and Harris:

"[PCR COUNSEL:]   [Claim] 7-Echo, Christina Love? Same question?

"[PETITIONER:]   Yes. I believe that she should have been called here today to testify in this matter. I did ask you to have her subpoenaed, because she was on my witness

---

[5] In the trial memorandum, for many of the claims, PCR counsel simply repeated the claim stated in the petition and then stated, "Petitioner may elect to testify about [the claim] at his post-conviction relief trial."

[6] The dissent notes that affidavits from two individuals, Collison and Harper, were introduced as evidence at the PCR trial. 280 Or App 665-66 (DeVore, J., dissenting). The record indicates that petitioner himself obtained those affidavits, and both affidavits are facially deficient because they do not include factual assertions to support a claim that Collison and Harper could have been located before the criminal trial.

list at trial, but never called. And she was in the courtroom the day of trial.

"[PCR COUNSEL:]   Anything further?

"[PETITIONER:]   No.

"[PCR COUNSEL:]   7-F, Melissa Henry?

"[PETITIONER:]   Once again, I have directed you to go get an affidavit and talk to her, and I've talked to Mr. Kraft, your investigator several times, I wrote him and talked to him, and he never did go get a statement from her.

"[STATE'S ATTORNEY]:   Objection, Your Honor, move to strike. Not relevant and it's not responsive to the question and issues before the Court.

"THE COURT:   That's sustained."

At the conclusion of the trial, the PCR court denied relief. In its written judgment, the court concluded that petitioner had failed to support his claims against PCR counsel because he had failed to offer testimony about those claims during the PCR trial. The court explained:

"At trial, [p]etitioner moved to postpone the hearing, claiming ineffective assistance of [PCR] counsel. He contended that Mr. Cowan had not been responsive to him. It is the [c]ourt's opinion that the materials submitted by Mr. Cowan adequately portray [p]etitioner's contentions, to which he agreed, in that he did not offer additional testimony at trial, except what was successfully objected to by the state."

After the trial, petitioner filed a written motion, asserting that he had asked PCR counsel to obtain testimony from witnesses who had not been called at the criminal trial and who would have supported petitioner's account of what had occurred, including witnesses who would have testified that Seifried had spoken about his plans to commit robberies and that Seifried had been in possession of guns.

Based on the record, we disagree with the dissent's opinion that the PCR court could conclude that petitioner's dispute with PCR counsel was merely a dispute about

evidence or strategy. It is clear from the record that petitioner was complaining about PCR counsel's failure to present any evidence, physical or testimonial, in support of the majority of petitioner's claims, a failure that the state itself had called to the attention of the PCR court and that the record bears out. Petitioner's complaints about PCR counsel, together with PCR counsel's own filings and trial presentation, were sufficient to put the PCR court on notice that petitioner was raising concerns about PCR counsel's abandonment of claims. Consequently, petitioner's dispute with PCR counsel could not be summarily dismissed as a dispute about *how* to raise claims; rather, it was a dispute about *whether* to raise claims at all.[7] Therefore, the court had to make a further inquiry to determine whether to require PCR counsel to make the claims or to substitute counsel.

In sum, we conclude that the PCR court erred by denying petitioner's motion for a continuance without affording petitioner an opportunity to make a record regarding the basis for the continuance. And, in response to the dissent, we further conclude that the PCR could not reject, without further inquiry, petitioner's complaints about PCR counsel's abandonment of many of petitioner's claims. We therefore reverse and remand for a new trial.

Reversed and remanded.

---

[7] The dissent repeatedly asserts that petitioner's complaints regarding PCR counsel concerned only "the quantum" of evidence that PCR counsel presented. *See, e.g.*, 280 Or App at 667-68, 670 (DeVore, J., dissenting). We disagree. To reiterate, petitioner's PCR claims included claims that defense counsel had failed to call certain witnesses at trial and sentencing. As discussed, to pursue those claims, PCR counsel needed to present evidence that, if believed, would establish that the witnesses would have been discoverable and available at the time of petitioner's criminal trial and would have testified in petitioner's favor. But, as the state pointed out to the PCR court, PCR counsel failed to present any such evidence for the overwhelming majority of those witnesses. PCR counsel abandoned petitioner's claims regarding those witnesses.

The dissent appears to contend that, so long as PCR counsel presented evidence to support petitioner's claim that Seifried was the aggressor, PCR counsel raised all of petitioner's PCR claims. *See* 280 Or App at 666-67 (DeVore, J., dissenting). That is incorrect. A PCR trial is not a retrial of the underlying criminal case. Thus, the issue is not whether PCR counsel presented evidence to rebut the criminal charges, but rather whether PCR counsel pursued the specific claims of petitioner's trial counsel's deficient performance made in the PCR petition. As discussed, it is clear from the record in this case that petitioner was complaining that PCR counsel had abandoned some of his claims.

**DEVORE, J.,** dissenting.

In fact, this irrepressible petitioner made his record before he left the stand. The court had several sound reasons to have immediately denied his motion to postpone trial when the court tried to cut him off. Later, without being cut off, petitioner made his record in writing. In two memos to the court, he repeated his reasons to have asked for postponement and, for the first time after trial, asked for a new lawyer. Later still, petitioner addressed the court in a hearing, with all the same reasons, in an effort to set aside the judgment. None were good reasons for postponement or for a new lawyer. None involved his lawyer's failure to have asserted grounds for post-conviction relief. None were the sort of reasons that the majority imagines, which might have been offered by a different petitioner in a different situation. Because there is a record, there is no basis to reverse the judgment.

Nor is there good authority. Reversing judgment returns our law to a state of confusion in which petitioners may make *pro se* motions about trial procedure whenever shadowed by disagreement with counsel. It is a state of confusion in which petitioners may be entitled to substitution of counsel although the trial court found only a disagreement about a choice of evidence or trial strategy. It is a state of confusion in which we ignore the trial court's findings about petitioner's disagreement with counsel. Because that state of affairs has already been rejected by our Supreme Court, I dissent.

The majority conflates the issues, rather than treating them distinctly, because petitioner does the same. In his appeal of a judgment denying post-conviction relief (PCR), petitioner first disputes the court's denial of his *pro se* motion to postpone the trial, which he urged as the trial began. Second, he disputes the court's response to his complaints about PCR counsel. Those complaints were made in colloquy on postponement of trial, but, on appeal, the complaints are incorrectly described as a request for directions to counsel or for substitution of counsel. Third, he disputes the court's denial of a written *pro se* motion, filed between trial and judgment, in which he did seek substitution of counsel or,

alternatively, directions to counsel. The post-trial motion was based on the alleged inadequacy of his PCR counsel. As to those issues of postponement and representation, this court should affirm.

## FACTS

The underlying criminal case began with a shooting. After drinking and playing video poker in the Chans's restaurant, petitioner and the victim had an argument outside in the parking lot. Petitioner shot the victim. The victim was found in another location and survived the shooting, but he was left paralyzed from the neck down. The victim accused petitioner of shooting him intentionally after the victim had refused to join petitioner in robbing a tavern across the street. Petitioner testified that the victim had wanted to rob the restaurant and that petitioner shot the victim accidentally, while he was defending himself from the victim. A jury convicted petitioner of first-degree assault, ORS 163.185, second-degree kidnapping, ORS 163.225, and felon in possession of a firearm, ORS 166.270.[1] He was acquitted of attempted murder.

In 2010, Cowan was appointed as counsel to represent petitioner in PCR proceedings. Cowan filed a petition alleging, as a ground for post-conviction relief, that petitioner's defense attorney failed to conduct a reasonable investigation, failed to obtain additional video from the restaurant security cameras, failed to call some witnesses, and failed to recall other witnesses to reiterate their testimony.

As trial began, the court admitted the parties' exhibits, including excerpts from the transcript of the underlying criminal trial. Each party filed trial memoranda. Cowan's trial memo reached 42 pages, citing evidence in support of petitioner's numerous arguments. Because much of the testimony upon which petitioner relied in his PCR trial had already been given in the criminal trial, the testimony of those witnesses was offered and presented again for PCR purposes through the transcript of that trial.

---

[1] We refer to all versions of ORS 163.185, ORS 163.225, and ORS 166.270 in effect at the time of petitioner's offenses in 2002.

Everson had already testified that the victim possessed a gun two days before the shooting and that the victim had asked Everson to be a wheelman in a robbery that the victim planned. Helzer had testified that the victim had financial obligations, wanted to commit a robbery, had a gun, and, after the shooting, had said that it was an accident. Goldsberry had testified that the victim had a reputation for violence, that he had seen the victim with a gun three days before the shooting, and that, after the shooting, the victim had described it as an accident.

In addition, petitioner's exhibits offered testimony by affidavit from two more witnesses. Attesting to be an undiscovered witness to the shooting, Collison described the victim as the attacker. Collison reported that he had observed the shooting from a nearby motel. To explain his belated account, he suggested:

> "Since I was not registered at the motel under my real name, I do not believe there was any way for [petitioner] or his defense counsel to be aware of me, or what I witnessed, until I initiated contact with [petitioner] while he was in prison for the above mentioned attack on him."

Petitioner's evidence also added an affidavit from Harper, an inmate and another new witness. Harper attested that he had spoken with the victim after the shooting. Harper recalled that the victim had admitted that he had planned a robbery, that petitioner had objected to the plan, a fight followed, and, according to the victim, the shooting was an accident.

As the PCR trial began, all of petitioner's exhibits were received without objection. Petitioner's attorney Cowan recited for the record that the court had agreed to leave the record open for 30 days in an effort to locate any missing surveillance tapes from the incident. Petitioner believed that there were additional tapes from the restaurant, including one of the parking lot.

Before taking testimony, the court explained that it had already received and reviewed "all the materials" on the case and reviewed everything "extensively." To discourage testimony that would repeat the written evidence, the court

cautioned petitioner, "I've read this more than once." Cowan responded that he had met with petitioner in preparation and would offer petitioner's testimony on anything he could add to the evidence and argument already in the exhibits and trial memo.

Upon taking the stand, petitioner spoke on his own initiative and not through counsel:

> "MR. PHILLIPS:   Your Honor, before we begin I'd like to address the court. I am moving at this time for a continuance of this proceeding.
>
> "THE COURT:   That's not allowed, Mr. Phillips. I'm denying your motion as not timely. Go ahead, Mr. Cowan."

The court acknowledged that petitioner was "asking that this be continued," but "the answer to that [is] it's not going to be continued." Petitioner insisted on making a record, presumably about the basis for his motion. This colloquy followed:

> "MR. PHILLIPS:   Mr.—well, I'd like to put on the record that Mr. Cowan has been non-responsive to my request to assist me and has completely failed to provide suitable counsel as required for my post-conviction proceedings.
>
> "THE COURT:   All right.
>
> "MR. PHILLIPS:   Mr. Cowan—
>
> "THE COURT:   Very well, I understand you object to this and you believe that he has not adequately represented you. I am not going to delay these proceedings based on your belief about that."

Petitioner began to explain that his concern involved "witnesses," but the court did not permit petitioner to say more.

Although he was cut short, petitioner still persisted in interjecting comments eight times, when asked during his direct examination to add to a point from the trial memo. He repeatedly commented that the point in question was one that his PCR attorney should have supported by calling a live witness or securing a witness affidavit. Seven of eight times, the state moved to strike the remarks as nonresponsive, and each time the court granted the objection. As an

evidentiary matter, petitioner has not assigned error to the court's rulings on the state's objections. Nevertheless, with his remarks, petitioner described the source of his dissatisfaction with PCR counsel and identified the evidentiary points where he was unsatisfied with his PCR case.

After closing arguments, the court took the case under advisement, while allowing 30 days for Cowan to offer any additional surveillance videotape. The court added:

"[I]t's appropriate at this point that I make one further observation, and that is in the beginning of these proceedings Mr. Phillips intended that he wanted it postponed, because he didn't feel as though Mr. Cowan had been adequately representing him. * * *

"* * * I can tell from the materials that have been submitted, and the efforts set forth here today that Mr. Cowan is doing a great job, and good job in representing Mr. Phillips, and the idea that he has been inadequate in his representation is entirely without merit."

After trial but before judgment, petitioner filed a *pro se* motion "for substitution of counsel or to compel counsel to carry out petitioner's request." This post-trial filing was petitioner's first request for substitute counsel or for directions to counsel. Petitioner's supporting memorandum asserted that Cowan had not attempted to get the security video tapes. Echoing the PCR claim itself, the post-trial memorandum reiterated that "petitioner has discovered witnesses who were available for trial, but who were not called." The memoandum did not name specific witnesses nor indicate what their testimony would have been. Petitioner stated that "[o]ne witness would have testified that he saw the entire event in support of petitioner's account." That statement would seem to refer to Collison, whose affidavit had, in fact, been admitted as an exhibit. Petitioner complained that

"Mr. Cowan ha[d] deliberately ignored petitioner's requests and refused to communicate with him for approximately one year. Then, just prior to the post-conviction hearing, Mr. Cowan provided petitioner with a Memorandum, which has no chance of meeting the post-conviction standard for relief without unless [*sic*] Mr. Cowan also provides the evidence and witnesses discussed in the Memorandum."

He cited *Church v. Gladden*, 244 Or 308, 417 P2d 993 (1966), in support of his motion.

In a letter, Cowan wrote to the court and reported that he was not able to obtain any missing surveillance videos. He advised that "the lead detective had retired and the tapes ha[d] gone missing or were destroyed."

Two weeks later, the court entered a judgment denying post-conviction relief. The judgment addressed petitioner's assertion of the inadequacy of Cowan as counsel, recounting:

> "At trial, petitioner moved to postpone the hearing, claiming ineffective assistance of [post-conviction] counsel. He contended that Mr. Cowan had not been responsive to him. It is the court's opinion that the materials submitted by Mr. Cowan adequately portray petitioner's contentions, to which he agreed, in that he did not offer additional testimony at trial, except what was successfully objected to by the state. The petitioner also moved the court to allow the assistance of a paralegal. The court denied the motions as not timely and inappropriate and required that the case proceed."

The judgment's statements responded both to the *pro se* motion in-trial to postpone and, by necessary implication, to the *pro se* motion post-trial to substitute counsel. *See* ORS 18.005(7) (general judgment defined); ORS 18.082 (effect of general judgment).

Turning to the merits, the court found that petitioner was not credible. The court observed that "[h]e has concocted a broad array of material, most of which would not be relevant under any interpretation of the law." The court found that "the affidavits of trial counsel, the prosecutor, trial transcripts and police reports are believable" and that the jury had had the opportunity to weigh credibility in reaching its verdict. The court found that most of the witnesses that petitioner believed should have been called to exonerate him had, in fact, already testified in his defense at his criminal trial. Petitioner had complained that those witnesses should have been called back to repeat their testimony after the victim's testimony was delayed by illness. The court observed that asking witnesses to repeat their

testimony "to 'refresh' their testimony for the jury" would not have been permissible at trial. The court declared that petitioner "has not presented credible evidence of how these witnesses could have helped him beyond what they testified to at trial." As for the character witnesses who petitioner alleged should have been presented in the underlying trial, the PCR court determined that the witnesses' testimony would have been inadmissible. In sum, the court concluded that petitioner had failed to prove any error by prior counsel or that any error substantially prejudiced his case.

Later, petitioner moved for relief from judgment and sought a new trial under ORCP 71 C. The court held a hearing, and allowed petitioner, who appeared *pro se*, to argue. He argued that, during trial, the court had prevented him from raising an issue under *"Church vs. Gladden* in [his] post-conviction [hearing] and state things on the record." *See Church*, 244 Or at 311-12 (concerning the effect of a petitioner's failure to complain of post-conviction counsel's failure to allege claims in post-conviction proceeding). Once again, petitioner argued that Cowan had failed "to obtain exculpatory tapes from the Happy Fortune Restaurant that *** would [have] clearly shown [his] innocence" and that Cowan had failed to "provide the witness[es] [petitioner] requested." After all that was said during trial and written after trial, the court responded that petitioner's *Church* "claims" against his PCR counsel were adequately presented and "they simply were unpersuasive." Petitioner does not assign error to the court's denial of his ORCP 71 C motion.[2]

## MOTION TO POSTPONE

As to the first assignment of error, this court reviews the denial of a motion for a continuance of trial for an abuse of discretion. *State v. Martinez*, 224 Or App 588, 591-92, 198

---

[2] Petitioner also does not assign error to the failure to have held a hearing per UTCR 5.050 on his earlier, post-trial, prejudgment motion for new counsel or for directions to counsel. *See* ORAP 5.45 (requiring assignments of error). Before the PCR proceedings concluded, the hearing on his ORCP 71 motion provided petitioner an unimpeded opportunity to make his record once again on those same arguments. *See* ORCP 71 B(1) (setting aside judgment for excusable neglect). Whether or not ORCP 71 is a vehicle for those arguments, the court entertained the arguments on the merits.

P3d 957 (2008), *rev den*, 346 Or 364 (2009). "Discretion" is a matter of choice among several legally correct outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, the trial court did not abuse its discretion." *Id.*

In this instance, any of three reasons made the court's prompt response to petitioner's *pro se* postponement motion a permissible response. The court responded, "That's not allowed, Mr. Phillips. I'm denying your motion as not timely."

First, because petitioner was represented by an attorney, yet urging a procedural motion *pro se*, the court was correct to say, "That's not allowed." In a recent PCR case, the Supreme Court held that a petitioner who has appointed counsel is not permitted to file ordinary motions on his or her own behalf. *Johnson v. Premo*, 355 Or 866, 877-78, 333 P3d 288 (2014). The right to represent oneself "does not allow a party to prosecute an action individually *and* through an attorney." *Id.* at 872 (emphasis in original). *Johnson* rejected the prospect of "hybrid representation" through motions from both counsel and petitioner *pro se. Id.* at 868. *Johnson* reaffirmed the historic "prohibition against nonlawyer legal practice" when a client is represented by an attorney. *Id.* at 872, 876-77. Here, petitioner was "not allowed" to offer a procedural motion *pro se.*

Second, a request to postpone trial must be made by motion, signed by the attorney of record, contain the necessary information, and be "filed at least 28 days before the date then set for trial." UTCR 6.030(1), (2), (4). Petitioner's request met none of the requirements of the rule.

Third, the denial of the motion was within the range of permissible discretionary rulings, given the circumstances of the case. The case had been filed December 21, 2009. By joint motion, trial had already been postponed before. The case had been pending for over three years. When the trial date arrived on April 18, 2013, the court had invested the time to study the parties' trial memoranda, the court had admitted the parties' 87 exhibits, and trial

had finally commenced. Under those circumstances, petitioner's motion could well be deemed "untimely." In declaring the motion untimely, the court *did* exercise its discretion, and it had a record to support the denial. The record that petitioner wished to make and later did make—the record that the majority believes petitioner was denied the chance to make—relates more directly to an issue of substitution of counsel than petitioner's procedural, *pro se* motion to postpone trial. The first assignment of error should be rejected.

The majority rejects those reasons because petitioner's motion to postpone trial was based on a disagreement with counsel about what evidence was necessary to try the case. Previously, in an order in *Johnson,* our court had misconstrued its prior decision in *Church,* 244 Or at 308, as permitting a petitioner to file procedural motions on his own behalf under certain conditions when client and counsel disagreed. *Johnson,* 355 Or at 868, 876-77. Motions for substitution of counsel or objections about counsel's failure to allege a PCR claim are different, of course, because a petitioner can only act *pro se* on substitution or omitted claims. In this case, the majority returns to allowing a *pro se* procedural motion when client and counsel disagree. That was this court's erroneous ruling in *Johnson*—a ruling overturned by the Supreme Court. In *Johnson,* we had mistakenly ruled that:

> "[a] petitioner * * * may file a motion in his or her own name based on a showing that the petitioner has a good faith and objectively reasonable belief that counsel lacks, or *is failing to exercise the 'skills and experience commensurate with the nature of the conviction and complexity of the case.'*"

355 Or at 870 (quoting order of Court of Appeals) (emphasis added). In this case, petitioner believed PCR counsel had failed to exercise the skill needed to present the case, and petitioner moved to postpone trial, not to replace counsel or object that a claim was omitted. The majority concludes that petitioner may make such a motion on his own behalf. In effect, the majority reinstates our discredited ruling in *Johnson* but without the requirements of good faith or an objectively reasonable belief.

## COMPLAINT ABOUT COUNSEL

Petitioner's second assignment of error should fail for different reasons, some specific to this record and some based on legal principles. In a misleading fashion, petitioner asserts that the PCR court "erred when it denied petitioner's verbal *Church v. Gladden* motion to instruct counsel to further investigate his claims or, alternatively for substitution of counsel." In *Church*, the Supreme Court enforced ORS 138.550(3), which bars relitigating claims in a second PCR proceeding, when the PCR claims already were or reasonably could have been asserted in a prior PCR proceeding. 244 Or at 310-11. Because the petitioner in *Church* sat silent in a first proceeding at which claims had been omitted, the Supreme Court held that the petitioner had waived them and become bound by claim preclusion. *Id*. In effect, *Church* obligated a petitioner to speak up personally about an omitted claim or ground for relief.

In this case, petitioner's initial problem is that, at trial, petitioner did not ask the PCR court to give directions to counsel, and he did not ask the court to substitute new counsel. Petitioner did not ask for the relief that his second assignment of error says that he did. At the beginning of trial, petitioner's complaint about PCR counsel arose in colloquy about his *pro se* motion to postpone trial. In reaction to a prompt denial, petitioner asked to put his reasons to postpone on the record. His complaint about PCR counsel occurred in this colloquy:

"MR. PHILLIPS:    I can't state something for the record?

"THE COURT:    Mr. Cowan or Mr. Phillips you're asking that this be *continued*, and the answer to that [is] it's not going to be *continued*. So, go ahead please.

"* * * * *

"MR. PHILLIPS:    Mr.—well, I'd like to put on the record that Mr. Cowan has been non-responsive to my request to assist me and has completely failed to provide suitable counsel as required for my post-conviction proceedings.

"* * * * *

"THE COURT: Very well, I understand you object to this and you believe that he has not adequately represented you. *I am not going to delay these proceedings based on your belief about that.*

"MR. PHILLIPS: Well, I'd like to state these issues on the record, Your Honor.

"THE COURT: I don't want to—

"MR. PHILLIPS: This is the only time is in a post-conviction proceedings.

"THE COURT: Well, you have said that you feel he has been unresponsive and not represented you adequately. That's about as broad as it possibly could be Mr. Phillips. [It] covers about everything—

"MR. PHILLIPS: Well, there's—there's—

"THE COURT: —that you might later claim. So—

"MR. PHILLIPS: *There's witnesses—*

"THE COURT: —I'm going to ask you sir to not discuss this further."

(Emphases added.) The colloquy reflects that (a) a "continuance" or "delay" of trial was the request at issue at that time; (b) petitioner's desire to postpone trial was founded on his dissatisfaction with PCR counsel; and (c) his dissatisfaction with counsel involved "witnesses" to support the PCR claim that his lawyer did bring. The court and petitioner spoke only about a motion for trial postponement.

Contrary to the second assignment of error, petitioner had not *made* a "verbal *Church v. Gladden* motion to instruct counsel to further investigate his claims or, alternatively, for substitution of counsel." The trial court could not have erred with regard to a verbal motion that was never made and never denied.[3] Thus, to the extent that the second assignment is an issue about a denial of a request for directions to counsel or replacement of counsel, the second assignment of error does not present a request, ruling, or an

---

[3] It is revealing that petitioner failed to identify in his second assignment of error the particular ruling that is challenged, failed to set out the pertinent quotation in the record, and failed to demonstrate that the issue was properly raised or preserved in the trial court. *See* ORAP 5.45(3), (4) (requiring same).

alleged error to review. ORAP 5.45(3), (4); *see also Mota v. Hill*, 215 Or App 623, 627, 170 P3d 1092 (2007), *rev den*, 346 Or 65 (2009) (finding no abuse of discretion when the court declined to appoint substitute counsel in absence of motion for substitute counsel).

I do share the majority's concern that petitioner was prevented from speaking further in his initial complaint about counsel as trial began. But, before reversing summarily, we should look at the entirety of the proceeding to see whether petitioner managed to make a record and, if so, whether it would have justified substitution of counsel. When doing so, we will discover that petitioner's deeper problem is the merits. He made a record about his dissatisfaction with counsel's presentation of his case, and, on that record, his complaint is not the kind of complaint that is cognizable under *Church*, nor grounds for substitution of counsel. To explain, I return to the trial record, then consider *Church*, its sequel, and authority on substitution of counsel.

Immediately after the opening colloquy, PCR counsel proceeded with petitioner's direct examination using petitioner's trial memo as a guide through the issues and evidence. In that 42-page memo, petitioner had applied the evidence to his multiple arguments, citing his 25 exhibits, affidavits, depositions, and excerpts of the underlying criminal trial transcript. That is what the PCR court had reviewed more than once before trial began. PCR counsel worked through the memo, point by point, asking petitioner if he had any testimony to add.

On eight points, petitioner replied nonresponsively by interjecting that the matter in question was one for which PCR counsel should have done more, such as calling a live witness or securing an affidavit. In that way, petitioner succeeded through his direct examination in making specific what he had meant, as trial began, by a general reference to "witnesses" when he sought postponement and complained about PCR counsel. No purpose would be served by published review of each occasion in which petitioner interjected a remark about the purported evidentiary failures of PCR counsel. Examples suffice.

When asked if petitioner had anything to add about an argument that criminal trial counsel had failed to use information from a defense investigator to discredit the shooting victim, this exchange ensued:

"Q. *** Is there anything relative to this particular claim that is not covered here *** that you wish to add to that claim for the court's review?

"A. Other than that I've asked you to have them here for testimony in my trial repeatedly, and it hasn't been done. Not even affidavits from them haven't [*sic*] been submitted."

As to another point involving Goldsberry, this exchange followed:

"Q. Claim C, the Goldsberry. Additional testimony?

"A. Yes, that I have asked you numerous times to have your investigator or you subpoena Mr. Goldsberry to this trial, and/or get a signed affidavit from him which hasn't been done."

As to witness Everson, a similar exchange followed:

"Q. Anything further you wanted to add to that matter?

"A. The same thing. I've asked you to have them testify live or affidavit, and neither one has been done."

PCR counsel had already offered in evidence the sworn testimony of several witnesses supporting petitioner's theory of the shooting. PCR counsel did not call the witnesses to repeat their testimony, but he *did* have their testimony in the PCR record to support petitioner's arguments about the failure of the original defense attorney to have called or re-called witnesses. PCR counsel also secured the admission of the affidavits of Collison and Harper. Collison attested to witnessing the shooting and he described the victim as the aggressor. Harper attested that the victim had admitted planning a robbery and that the victim had described the shooting as an accident.

All those things—numerous exhibits and an evidentiary trial memo—the PCR court had admitted and reviewed when trial began. As a consequence, when petitioner faulted

his attorney, and when petitioner particularized his complaints with eight references to evidence he wanted, the PCR court had a record from which to know that PCR counsel had already covered the points with documentary exhibits or with testimony in affidavit, depositions, and transcript. The PCR court had a record with which to recognize that petitioner's dispute with counsel was a dispute about additional evidence, which is a matter of trial strategy. The PCR court could recognize from petitioner's remarks that petitioner failed to appreciate the shift in issues from a criminal trial to a proceeding for post-conviction relief. Petitioner wanted to retry his criminal case in order to determine anew his credibility and his account of the shooting. From that record, we should recognize that petitioner's dispute with counsel was not about a failure to allege any claim or ground for relief in the PCR proceeding. As such, petitioner's quarrel with PCR counsel was not a quarrel cognizable under *Church*. Nor were petitioner's complaints the sort to justify substitution of counsel. Several cases lead to those related conclusions.

In *Church*, introduced above, the issue was whether claims were precluded from relitigation in a subsequent or second PCR proceeding. 244 Or at 310-11. By failing to plead them, two claims had been wholly omitted in the first proceeding. A third claim, in the plaintiff's view, had been effectively not prosecuted due to a failure to call witnesses—an issue that the majority in this case resurrects (hereafter *Church's* "witness claim"). 280 Or App 643-44. The Supreme Court enforced claim preclusion, as dictated by ORS 138.550(3), because, by remaining silent, the petitioner had acquiesced in the failure to assert the omitted or unprosecuted claims. *Church*, 244 Or at 312.

In something of a sequel, the *Johnson* decision explained *Church*, distinguishing those disagreements that are not reason for court intervention in a dispute with counsel from those that are. 355 Or at 868, 876-77. The *Johnson* opinion noted that some language in *Church* had been read too broadly. *Id.* at 876. That is the language on which petitioner in this case relies. *Johnson* recalled that *Church* had stated:

> "'If petitioner's attorney in the first post-conviction pro-
> ceeding failed to follow *any legitimate request,* petitioner
> could not sit idly by and later complain. He must inform
> the court at first opportunity of his attorney's failure and
> ask to have him replaced, or ask to have him instructed by
> the court to carry out petitioner's request.'"

*Id.* (emphasis added) (quoting *Church,* 244 Or at 311-12)).
Referring to *Church* and a failure to raise claims, the court
in *Johnson* explained:

> "*Church* thus pertained to the *res judicata* provision of
> the [Post Conviction Hearing Act], ORS 138.550(3), noth-
> ing more. It concerned the extent to which a post-conviction
> petitioner may assert a *'ground for relief'* in a subsequent
> petition that could have been asserted earlier. This court
> held that, if a postconviction petitioner's attorney fails to
> assert a ground for relief, the petitioner must 'inform the
> court' of the attorney's failure to avoid the preclusive effect
> of ORS 138.550(3). To be sure, the court referred to an
> attorney's failure to follow 'any legitimate request.' 244 Or
> at 311. But that reference should be taken in context. The
> court's statement plainly was rooted in its interpretation
> and application of ORS 138.550(3), which provides that
> *'grounds for relief'* must be asserted or be deemed waived."

*Id.* (emphases added). *Church* was about omitted claims in
relation to claim preclusion; it was not about whether PCR
counsel and client disagree about a client's desire for addi-
tional witnesses or other matters of trial strategy.

Nonetheless, the *Johnson* petitioner had "insist[ed]"
that one of the *Church* petitioner's grievances had been that
his attorney had failed to present witnesses on a ground that
*was* alleged in the first proceeding—that is to say, the "wit-
ness claim." 355 Or at 877. In a rebuke that speaks to our
majority opinion, the Supreme Court rejoined that *Church*
had merely assumed, *without deciding,* that all three dis-
puted claims had stated an adequate ground for relief. *Id.*
The Supreme Court went on to explain that *Church* did not
permit a petitioner to request relief "any time the petitioner
disagrees with counsel's prosecution of the case." *Id.* The
court stressed:

> "*Church* says no more than this: If a post-conviction peti-
> tioner's attorney fails to assert a *ground for relief,* the

petitioner must bring that fact to the attention of the court to avoid the effect of ORS 138.550(3)."

*Id*. (emphasis added). *Church* does not authorize a petitioner to file motions or interpose objections "on every single issue of trial strategy" or evidentiary disagreement. *Id*. "By its terms, the decision is limited to the matter of attempting to relitigate a 'ground for relief' within the meaning of ORS 138.550(3)." *Id*.

As for the substitution issue here, in *State v. Langley*, 314 Or 247, 256-58, 839 P2d 692 (1992*), adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993), the court considered a request for appointment of new counsel in a criminal case. Although it was not a PCR case with a *Church* problem, it is instructive as to substitution of counsel in a PCR case, where, as here, there is not a true *Church* problem (*i.e.*, failure to allege a claim). *See Knox v. Nooth*, 244 Or App 57, 67, 260 P3d 562 (2011) (same). In *Langley*, the defendant presented a motion for appointment of new counsel on the first day of trial in a case of aggravated murder. 314 Or at 256. He told the court that he no longer could work with his lawyers. *Id*. He complained that, in a prior proceeding with the same lawyers,

> "[he] was not allowed to put on all of his evidence and was lied to and manipulated by his attorneys in order to keep this evidence out of the proceedings. His attorneys did not discuss defense strategy nor go over the defendants [*sic*] testimony before his taking the stand."

*Id*. at 257 (internal quotation marks omitted). The trial court gave the defendant several options in proceeding with or without existing counsel. Whatever the choice, the court warned that the trial would not be postponed. *Id*. The defendant chose to continue with counsel, but he still filed a written motion for substitution of counsel, which the court denied. He challenged that denial on appeal. *Id*. at 256.

The Supreme Court framed the issue as a factual assessment of whether the complaint against counsel was "legitimate." The standard of review was for abuse of discretion. *Id*. at 258. The court concluded:

> "It appears from the record that defendant's claim that his lawyers were ineffective (or inadequate) was based

chiefly on his dissatisfaction with their choices of strategy. *A simple loss of confidence or disagreement with counsel's approach to matters of strategy is not cause to substitute one appointed lawyer for another."*

*Id.* at 258 (emphasis added). The Supreme Court held that the trial court had not abused its discretion in denying the defendant's motion for substitution of counsel. *Id.* at 259.

In this case, the PCR court could recognize, as should we, that petitioner's complaint that PCR counsel had "been non-responsive" to petitioner's requests involving "witnesses" was not a cognizable failure under *Church*, because disagreement about additional testimony was not a failure to have raised alleged claims for relief. When petitioner protested a lack of witnesses on a number of points, petitioner further specified for the record the nature of his disagreement with counsel. Before petitioner left the stand, he had made plain to the PCR court that his issues with PCR counsel were matters of disagreement about additional evidence or trial strategy. As such, they were not issues that were necessary to prevent claim preclusion under *Church*.

Properly understood, petitioner was concerned, not about a *Church* failure to allege a claim, but about the quantum of proof presented for a claim that his lawyer did allege. As such, petitioner's grievance against counsel resembled the "witness claim" in *Church*, a disagreement that *Johnson* limited by distinguishing differences over strategy. It is that "witness claim" from *Church* that the majority resurrects here as if it were a true *Church* claim against counsel.

If, because he was cut short, we were to assume petitioner would have asked that the court give directions to counsel or substitute counsel, then we should conclude that the PCR court did not abuse its discretion in denying such an implicit request, because the record demonstrates that petitioner's problem with counsel lay in how well counsel presented the claims, not whether counsel failed to allege claims or grounds for relief. *See Johnson*, 355 Or at 876-77. "A simple loss of confidence" or a disagreement over strategy or evidence was not cause for the PCR court to have done differently. *Langley*, 314 Or at 258. On appeal, we should

conclude that the PCR court did not err in how it responded to petitioner's comments during trial about PCR counsel.

## MOTION TO SUBSTITUTE COUNSEL

Petitioner's third assignment of error presents more squarely the same problems and principles. Petitioner asserts that the PCR court "erred when [it] failed to act on petitioner's written motion pursuant to *Church v. Gladden.*" It was not until that motion, made after trial, that petitioner actually asked the court to substitute counsel or, in the alternative, to direct counsel's work.

In his *pro se* memorandum on his motion, petitioner reiterated the argument that he had discovered witnesses who were available for trial but not called. Although not named, the one witness who he described was an eyewitness who saw the shooting. Based on the same evidentiary complaints made during trial, petitioner asked for new counsel or directions to existing counsel. As just discussed, petitioner's dissatisfaction was based in a desire for additional evidence. It was a disagreement about trial strategy.

Petitioner seemed not to have appreciated the function of the testimony and evidence that was already in the PCR record. Nor does the majority opinion when describing petitioner's complaint about Cowan as an "abandonment of claims." 280 Or App at 647. In fact, witnesses Everson, Helzer, and Goldsberry did provide transcribed testimony in the PCR case, by means of the criminal trial transcript, that did serve to prosecute, not abandon, petitioner's theory of his case that the victim was the aggressor. Petitioner complained that his original trial counsel was inadequate for having failed to re-call them to testify again to refresh the jury's recollection *after* the victim had testified out of sequence. At the PCR trial, it sufficed to show what their repeat testimony would have been by showing what their earlier trial testimony had been. They need not have been called anew in the PCR trial to prove the point about repeat testimony.

Petitioner complained that PCR counsel should have offered affidavits or called live witnesses who had not been at the criminal trial. PCR counsel had, however, offered

the affidavit of Collison, the previously undiscovered eye-witness, who described the victim as the attacker. Harper's affidavit was in evidence, too. Whether live or by affidavit, that witness testimony did serve to pursue, not abandon, petitioner's theory about who was the aggressor. On review, our role ought not be to weigh the adequacy of that evidence in presenting petitioner's case, nor should we disregard, as does the majority, the evaluation that the PCR court did do.

The majority mentions by name three uncalled witnesses, as if suggestive of Cowan's abandonment of the PCR case. 280 Or App at 643. The majority pulls from the PCR petition the names and putative testimony of Love, Henry, and Davis. *Id*. The petition, of course, represents the comprehensive effort of petitioner's counsel to allege everything petitioner imagines wrong in the underlying case. The putative testimony of Love, Henry, and Davis, however, was not unique; their absence was not a hole in the case. The same testimony about the gun, the victim's alleged interest in robbery, and the like was already covered by the admitted testimony of Everson, Helzer, and Goldsberry, as well as the affidavits of Collison and Harper. Whatever the comparative value of the potential testimony of Love, Henry, and Davis, it is still a relative matter. The evidence that PCR counsel chooses to present or not present at the PCR trial is still a choice of evidence or trial strategy, not an abandonment of the claim.[4]

Moreover, there could be good reason to avoid calling duplicative witnesses. For example, the majority, referring to the petition, repeats the allegation that "Henry, who was [the victim's] girlfriend at the time of the shooting, would have testified that Seifried intended to commit a robbery and that he possessed guns." 280 Or App at 643.

---

[4] The majority correctly observes, "A PCR trial is not a retrial of the underlying criminal case." 280 Or App at 647 n 7. The dissent does not misunderstand the concept. The difficulty in discussing what should have been done is that *petitioner* seemed to confuse the PCR case with the underlying criminal case. 280 Or App at 660-61 (DeVore, J., dissenting). Without such confusion, the PCR court concluded in its judgment that petitioner "concocted a broad array of material" and that his allegations were not believable. Later in a post-judgment order, the court added that petitioner claimed that he "has discovered witnesses who were available for trial, but who were not called." The court concluded, "He is not credible, and the court finds these allegations are not true."

As it happens, petitioner's investigator in the underlying case reported, "She never saw [the victim] with a weapon or heard him talk about committing a crime." Putting her on the witness stand could well have backfired. Omitting her was trial strategy, not abandoning the PCR claim.

The majority quarrels with the idea that trial counsel could have chosen to avoid duplicative witnesses. 280 Or App at 644 n 4. The majority says, "That suggestion overlooks the value of corroboration." *Id.* Corroboration, of course, is a matter of the comparative strengths and weaknesses of witnesses on a given point. It is, in the first instance, a matter of trial strategy for trial counsel and, in the PCR case, again, a matter of trial strategy. It is not a reason for new counsel.

After the PCR trial, petitioner had several, unlimited opportunities to describe his dissatisfaction with Cowan— the post-trial motion for new counsel, the motion for relief from judgment, and a hearing before the court on the last motion. It is significant that, in his memos to the court, petitioner never once mentioned Love, Henry, or Davis. Instead, he complained of the absence of Collison, the undiscovered eyewitness at the time of the underlying trial, whose affidavit *was* in evidence. Although petitioner was unhappy with the quantum of evidence, the record dispels any notion that that there was an "abandonment" of petitioner's claim. Even if *Church* were understood to extend to "abandonment" of a pleaded claim like its "witnesses claim," the transcribed testimony, affidavits, other exhibits, a detailed trial memo, and arguments, all here as proof of petitioner's claim, preclude any potential "abandonment" theory in this case. This was a trial on the evidence, not a summary judgment for the state.

As a consequence, petitioner's post-trial motion was no more than a motion for substitution of counsel or for directions to counsel. Coming late, it was a motion made after trial was concluded and the record closed, except for the search for any additional surveillance tapes. We review a denial of a request for substitute counsel in a PCR case for an abuse of discretion. *Temple v. Zenon*, 124 Or App 388, 392, 862 P2d 585 (1993). Ordinarily, such a motion could

be resolved on the written record and without a hearing. *Elkins v. Thompson*, 174 Or App 307, 316, 25 P3d 376 (2001), *rev den*, 332 Or 558 (2001) (due process does not require a hearing).

At the conclusion of trial, the court had already responded to petitioner's complaint about counsel, observing that, after review of petitioner's materials and after observing trial, "Mr. Cowan [was] doing a great job[.]" Moreover, "the idea that he has been inadequate in his representation is entirely without merit." In the judgment, the court declared, "It is the Court's opinion that the materials submitted by Mr. Cowan adequately portray petitioner's contentions * * *." After unlimited written arguments after trial and after judgment, the PCR court explained that petitioner's complaints against Cowan "simply were unpersuasive."

In *Langley*, the Supreme Court considered a defendant's similar dissatisfaction with trial counsel. 314 Or at 256-59. That defendant had complained that his attorneys had not allowed him to put on all his evidence and had lied to him in another proceeding. *Id*. at 257. The court concluded that the dissatisfaction involved "choices of strategy." *Id*. at 258. Even so, a "simple loss of confidence or disagreement" over presentation of evidence was "not cause to substitute one appointed lawyer for another." *Id*. The court found no abuse of discretion when that trial court denied the defendant's motion for substitution of counsel. *Id*. at 259.

In this case, the trial court had observed PCR counsel throughout trial and had received evidence point by point covering petitioner's numerous claims. The judge had experience in "well over 100" PCR cases when he concluded that PCR counsel had done a "great" job. The PCR court had a record upon which to conclude that petitioner's dissatisfaction, like the petitioner in *Langley*, involved a loss of confidence or dissatisfaction over strategy and presentation. It was not cause for directions to counsel or substitution of counsel. In this appeal, we should address the third assignment of error, where petitioner does present the issue of substitution of counsel. Based on the full record upon that motion, we should conclude that the court did not abuse its discretion in allowing the substitution motion to be denied

by operation of judgment. *See Langley*, 314 Or at 257-59; *see also Mota*, 215 Or App at 627 (petitioner dissatisfied that counsel had not presented all the issues he wanted in the petition but could not identify any); *Elkins*, 174 Or App at 317 (petitioner dissatisfied with counsel's perceived lack of attention to his case); *Temple*, 124 Or App at 392-93 (petitioner dissatisfied that counsel had failed to add numerous claims to the petition). We should not conflate the issues with the postponement motion. We should view the issues distinctly.[5]

## MAJORITY OPINION

To be precise, the majority addresses only the first assignment of error concerning the motion to postpone trial, although its rationale necessarily involves issues attempted in the second assignment and actually asserted in the third assignment concerning counsel. 280 Or App at 642. The majority holds that, "[t]he PCR court abused its discretion by denying petitioner's motion for a continuance without allowing petitioner to make a record regarding the basis for the motion." *Id.* at 637. The majority concludes that because "the PCR court refused to afford petitioner an opportunity to identify the relevant circumstances," and the court was not in a position to determine whether petitioner had good cause for making the motion when he did. *Id.*

Citing *Combs v. Baldwin*, 161 Or App 270, 276-77, 984 P2d 366 (1999), the majority imagines that, given the opportunity, petitioner might have asserted a conflict of interest involving counsel, something that could have required a hearing to determine. This case, however, is most unlike *Combs*. In that case, we explained that:

"The trial court record is *silent* as to whether plaintiff had the *opportunity, after the trial court ruled*, to protest personally the trial court's denial of his request to substitute counsel or to appear *pro se*. * * *

"* * * Because plaintiff was not given an opportunity to be heard, we cannot determine whether he has had the opportunity to present his side of the issues. *It would be*

---

[5] In his brief, petitioner similarly conflates all three assignments of error by addressing them with one combined argument.

> *a different matter if he had such an opportunity* and had failed to offer an explanation of his claims."

*Combs*, 161 Or App at 277 (emphases added).

In this case, the record is not "silent." Petitioner did have an opportunity "after the trial court ruled" to "protest personally" and "to offer an explanation of his claims." Petitioner's issue was *not* an argument about a conflict of interest. His issues were disagreements about the quantum and quality of evidence—live testimony rather than transcribed testimony, additional testimony on points covered in affidavits and the underlying transcript, and videotape that did not exist. Under *Langley*, those were issues involving trial strategy or "a simple loss of confidence" inasmuch as they involve the presentation or quantum of evidence. 314 Or at 258. As such, they are "not cause to substitute one appointed lawyer for another." *Id.* In this case, petitioner made a record while still on the witness stand and twice in writing before and after judgment. As a result, the PCR court had a record, unlike the court in *Combs*, to determine the nature of the dispute.

In the course of this case, the PCR court decided that PCR counsel was adequate several times—when commenting at the end of trial, when entering judgment, and when denying petitioner's motion to set aside judgment. In contrast, the majority decides the appeal by focusing solely on the PCR court's initial ruling on the motion to postpone. By isolating on the abrupt manner in which the PCR court ruled on postponement, the majority ignores the full record when petitioner actually did move for substitution of counsel without being impeded. By isolating on the absence of a record in the initial colloquy on postponement, the majority is able to proceed as if there were no record or ruling on any *Church* or substitution issue.

There is, however, a record and a ruling on those issues. The PCR court did evaluate those issues, make findings, and reach conclusions. Before all was said and done, the PCR court explained that petitioner's complaints about his PCR counsel were "unpersuasive." If we afforded the trial court the benefit of implicit findings consistent with its conclusion, as we should, *Ball v. Gladden*, 250 Or 485,

487, 443 P2d 621 (1968), then the court's conclusion meant that the court found that PCR counsel had *not* "abandoned" petitioner's claims. Nevertheless, the majority *is* persuaded that PCR counsel failed his client. The majority finds that "it became apparent that petitioner's PCR counsel had abandoned many of petitioner's claims." 280 Or App at 645, 647, 647 n 7. The majority makes that finding—ostensibly without reaching the second or third assignments of error—while deciding only the first assignment involving a motion to postpone trial. In doing so, the majority effectively substitutes its judgment—declaring early procedural error on postponement—for the findings and conclusions that the PCR court made on the merits, after full trial, and after petitioner elaborated freely about his complaints about counsel. To do so is a disregard of our abuse-of-discretion standard of review on postponement of trial or substitution of counsel. The trial court, knowing the underlying record of the criminal trial, had a basis to assess the role and effect of re-calling witnesses for repeat testimony, calling witnesses who were duplicative, calling witnesses who offered affidavits, and calling character witnesses for inadmissible testimony—both in the underlying case and in the PCR case. The PCR court had a basis on which to conclude that, because such testimony would have done little in the underlying case, such testimony would have done little in the PCR case to show trial counsel to have been inadequate. Accordingly, the absence of such testimony did little to show PCR counsel to have been inadequate.

The issue in the case was not simply about allowing more of a record on postponement. It was not about a failure, under *Church*, to bring a claim. The issue was whether petitioner had a "legitimate complaint" about counsel or instead had a misunderstanding about evidence or trial strategy. *See Langley*, 314 Or at 258. The real issue was whether the PCR court abused its discretion in denying a substitution of counsel. *Id.* Considering the full record as did the PCR court, I suggest that the PCR court did not err in any of the three ways assigned. I fear that it may be we who err.

## CONCLUSION

In this case, reversal and remand for another trial comes at an unnecessary cost of judicial resources. Worse, we miss the chance to clarify the law where parties confuse

or shun the principles in *Church, Johnson,* and *Langley.* We perpetuate the confusion by reinstating *pro se* procedural motions contrary to *Johnson,* in resurrecting the doubtful "witness claim" from *Church,* in positing an "abandonment" of a PCR claim where it is a dispute about the quantum of the evidence, and in ignoring findings below while disregarding our standard of review on substitution of counsel. We do the trial courts no favor, because cases like this, involving complaints about counsel, occur repeatedly. Suffering the opinion that the Supreme Court has already rejected such confusion, I dissent.